No. 57,571

STATE OF KANSAS, *Appellant,* v. WILLIAM G. BARCLAY, *Appellee.*

(708 P.2d 972)

Opinion filed October 25, 1985.

*Geary N. Gorup,* assistant district attorney, argued the cause, and *Clark V. Owens,* district attorney, and *Robert T. Stephan,* attorney general, were with him on the brief for appellant.

*E. Lael Alkire,* of Wichita, argued the cause, and *Ernest L. Tousley,* of O'Hara, O'Hara & Tousley, of Wichita, was with him on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, J.: Defendant William G. Barclay is an ordained Baptist minister who operates a wedding chapel in Wichita. Defendant refused to officiate at certain wedding ceremonies to be held in his chapel on the ground that a marriage of a black person and a white person violated his religious beliefs. The District Attorney's office filed a complaint/information against the defendant charging him with three counts of denial of civil rights contrary to K.S.A. 21-4003(1)(d). The district court dismissed the complaint on the ground that K.S.A. 21-4003 was unconstitutional as applied to defendant herein. The State appeals from said dismissal pursuant to K.S.A. 22-3602(b).

K.S.A. 21-4003 provides:

"**Denial of civil rights.** (1) *Denial of civil rights is denying to another, on account of the race, color, ancestry, national origin or religion of such other:*
"(a) The full and equal use and enjoyment of the services, facilities, privileges

and advantages of any institution, department or agency of the state of Kansas or any political subdivision or municipality thereof; or

"(b) The full and equal use and enjoyment of the goods, services, facilities, privileges, advantages and accommodations of any establishment which provides lodging to transient guests for hire, or any establishment which is engaged in selling food or beverage to the public for consumption upon the premises, or any place of recreation, amusement, exhibition or entertainment which is open to members of the public; or

"(c) The full and equal use and enjoyment of the services, privileges and advantages of any facility for the public transportation of persons or goods; or

"(d) *The full and equal use and enjoyment of the services, facilities, privileges and advantages of any establishment which offers personal or professional services to members of the public;* or

"(e) The full and equal exercise of the right to vote in any election held pursuant to the laws of Kansas.

"(2) Denial of civil rights is a class A misdemeanor." (Emphasis supplied.)

The matter was determined on stipulations of fact entered into by the parties. They are as follows:

### "[Original] Stipulation

"1. The defendant is a 70-year-old resident of Sedgwick County, Kansas, and is an ordained Baptist minister, having been ordained January 22, 1941, sponsored by the Burke Baptist Church of Burke, Texas.

"2. That the defendant has on file with the probate court of Sedgwick County, Kansas, the appropriate documentation required under the laws of the State of Kansas to be filed with said court which permits the defendant as a minister of the gospel to perform marriage services, which said document was filed with the probate court of Sedgwick County, Kansas, August 21, 1974.

"3. That the defendant is at this time, still in good standing as an ordained minister in the Baptist Church.

"4. It is agreed that under the laws of the State of Kansas, the only persons permitted to perform marriage ceremonies in Kansas are judges and ministers of the gospel and that in [Sedgwick County] said ministers must be registered with the probate court of Sedgwick County, Kansas.

"5. It is agreed that the defendant has held full time pastorates in Texas and Oklahoma. The defendant was an active full time minister for 17 years, last having held a full time pastorate in Newkirk, Oklahoma, at First Baptist Church in 1957.

"6. It is stipulated that the defendant always involves prayer in his wedding services, but his wedding services are not limited to persons of any particular faith.

"7. It is agreed that the defendant's listing in the Wichita, Kansas, phone book is not under churches, but is listed under wedding chapels and is the only wedding chapel listed in said phone book's yellow pages. It is known and commonly referred to as All Faiths Wedding Chapel.

"8. The defendant has refused to marry a black person and a white person on the basis that it is against his religious beliefs, but has permitted such marriages to occur at the All Faiths Wedding Chapel when performed by other ministers or judges. Defendant will marry people of like races."

### "SUPPLEMENTAL STIPULATIONS

"1. No church services (ie., gathering of persons to worship) are performed on the premises under the control of the defendant known as the All Faiths Wedding Chapel.

"2. No person or persons outside of the defendant and his immediate family practice the conviction against marrying persons of different races on the premises known as the All Faiths Wedding Chapel.

"3. Neither the defendant nor the All Faiths Wedding Chapel are exempt from paying either State of Federal income or property taxes.

"4. On the dates indicated in the Complaint/Information filed herein, the defendant refused to marry persons of different races."

Further, the parties stipulated that the following (in affidavit form) would be the substance of defendant's testimony on direct examination if called to testify:

"1. Affiant states that he was ordained a Baptist minister in 1941 and remains an ordained minister. I was a full time minister for 17 years and last was a minister of the First Baptist Church at Newkirk, Oklahoma, departing that church as their minister about 1957.

"2. Affiant states that at one time he performed a marriage between a black person and a white person, which function bothered him a great deal. Affiant consulted his Bible (the King James version) at great length and concluded that it was not proper under the teachings of the Bible for a black and a white to marry. The basis of affiant's religious belief is the Bible and therefore, under its teachings, he as a matter of religious belief, refuses to marry a black and a white.

"3. Affiant states that there are 30 references to the mixing of the races and of nations in the Bible, and as affiant studies and interprets the word of God as set forth in the Bible, we are taught that each must marry his own kind and affiant will furnish the citations in the Bible and his interpretation of them on request.

"4. Affiant states that he will not marry the black and the white as it would constitute a mixing of the races. His refusal to conduct the marriage sacrament between a black and a white is based on a deep seated religious belief. Affiant will however, conduct the marriage sacrament when a black marries a black."

Additionally, it was stated in arguments before the district court and this court that while defendant would not personally perform the marriage sacrament to interracial couples, such marriages have been conducted at the wedding chapel with defendant arranging for a judge to officiate therein. The State does not challenge these factual contentions and we accept them, as did the district court, as a part of the stipulated facts.

Pertinent Kansas statutes relative to marriage are as follows:

K.S.A. 23-101: "Nature of marriage relation. The marriage contract is to be considered in law as a civil contract between two parties who are of opposite sex, to which the consent of the parties is essential; and the marriage ceremony may be regarded either as a civil ceremony or as a religious sacrament, but the

marriage relation shall only be entered into, maintained or abrogated as provided by law."

K.S.A. 1984 Supp. 23-104a: "**Solemnizing marriage; persons authorized to officiate.** (a) Marriage may be validly solemnized and contracted in this state, after a license has been issued for the marriage, in the following manner: By the mutual declarations of the two parties to be joined in marriage, made before an authorized officiating person and in the presence of at least two competent witnesses over 18 years of age, other than the officiating person, that they take each other as husband and wife.

"(b) The following are authorized to be officiating persons:

"(1) Any currently ordained clergyman or religious authority of any religious denomination or society;

(2) any licentiate of a denominational body or an appointee of any bishop serving as the regular clergyman of any church of the denomination to which the licentiate or appointee belongs, if not restrained from so doing by the discipline of that church or denomination;

(3) any judge or justice of a court of record; and

(4) any retired judge or justice of a court of record.

"(c)  The two parties themselves, by mutual declarations that they take each other as husband and wife, in accordance with the customs, rules and regulations of any religious society, denomination or sect to which either of the parties belong, may be married without an authorized officiating person."

Does K.S.A. 21-4003(1)(d) compel defendant to perform, personally, the wedding ceremony to any couples with: (1) legal capacity to marry; and (2) adequate funds to pay for the services? We believe not.

The First Amendment to the United States Constitution provides:

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

While the First Amendment says that "Congress shall make no law . . .", it goes without saying that, at this point in the development of constitutional theory, the First Amendment is applied to the states through the Fourteenth Amendment. See, *e.g., Powers v. State Department of Social Welfare,* 208 Kan. 605, 614, 498 P.2d 590 (1972).

Section 7 of the Kansas Constitution Bill of Rights provides:

"**Religious liberty.** The right to worship God according to the dictates of conscience shall never be infringed; nor shall any person be compelled to attend or support any form of worship; nor shall any control of or interference with the rights of conscience be permitted, nor any preference be given by law to any religious establishment or mode of worship. No religious test or property quali-

fication shall be required for any office of public trust, nor for any vote at any election, nor shall any person be incompetent to testify on account of religious belief."

Defendant's capacity to perform weddings in Kansas is derived wholly from his status as an ordained clergyman, and when he is officiating at a wedding, he is performing a religious sacrament. Clearly, ownership of the wedding chapel business does not require the owner to be ordained. A lay person could own such a business and make arrangements, when requested, for a person (judge or minister) to officiate at the ceremony. Use of the premises with such additional amenities as the couple may contract for and receipt of the personal services of the defendant in officiating at the ceremony are not components of one indivisible unit. Couples patronizing the wedding chapel may, in essence, rent the physical premises and make their own arrangements for a person to officiate (minister or judge). On request, defendant may make arrangements for the services of a person to officiate. Or, defendant may perform the wedding himself.

The facts herein are readily distinguishable from those in *State ex rel. Pringle v. Heritage Baptist Temple, Inc.*, 236 Kan. 544, 693 P.2d 1163 (1985); and *State ex rel. O'Sullivan v. Heart Ministries, Inc.*, 227 Kan. 244, 607 P.2d 1102 (1980), where licensure of a church-operated day-care center and a children's boarding home, respectively, were at issue.

Through criminal charges the State is attempting to punish an ordained minister (and deter him and other ministers from future like conduct) for refusing to perform the marriage sacrament for particular couples when said refusal was based upon the minister's sincere personal religious beliefs. It is not the function of the courts to determine what is or is not the correct interpretation of the biblical passages relied upon for such beliefs. The parties have not cited, nor has our research revealed, a single case from any jurisdiction within the United States where criminal prosecution of a minister has been attempted under even remotely comparable circumstances. Refusal of a minister, personally to perform a marriage, is not a life-threatening situation which might compel a court's intervention in what is otherwise a "hands off" constitutionally protected area.

The trial court dismissed the criminal charges herein on the

basis that K.S.A. 21-4003 was unconstitutional as applied to defendant under the circumstances herein.

As stated in *U.S.D. No. 503 v. McKinney*, 236 Kan. 224, 689 P.2d 860 (1984):

"Longstanding and well-established rules are that the constitutionality of a statute is presumed, that all doubts must be resolved in favor of its validity, and before the statute may be stricken down, it must clearly appear the statute violates the Constitution. Moreover, it is the duty of the court to uphold the statute under attack, whenever possible, rather than defeat it, and if there is any reasonable way to construe the statute as constitutionally sound, that should be done. *State, ex rel., v. Fadely*, 180 Kan. 652, 658-59, 308 P.2d 537 (1957); *Wall v. Harrison*, 201 Kan. 600, 603, 443 P.2d 266 (1968); *Moore v. Shanahan*, 207 Kan. 645, 651, 486 P.2d 506 (1971); 16 Am. Jur. 2d, Constitutional Law § 254, pp. 719-73. See *Leek v. Theis*, 217 Kan. 784, 792-93, 539 P.2d 304 (1975)." 236 Kan. at 230-31.

The reasoning behind these well-established rules of statutory construction was stated in *State v. Smiley*, 65 Kan. 240, 69 Pac. 199 (1902), as follows:

" 'If the intention of any part of the act, determined upon settled principles of legal interpretation, were to obstruct or impede the exercise or enjoyment of any right secured by the constitution of the United States, or by any constitutional law of the United States, that part would be unconstitutional. But if the intention thus determined were merely to establish, regulate, or guarantee rights or privileges consistent with the constitution and laws of the United States, in a mode not in conflict with either, and if the act would constitutionally apply to a large class of cases that do and will exist, it would not be rendered unconstitutional by the fact that, literally construed, its language might be broad enough to extend to a few exceptional cases where it could not constitutionally apply; since, upon settled principles of construction, the latter are as fully and effectually excepted by necessary implication, as if the statute had contained an express proviso that it should not extend or apply to such cases. The rule of construction universally adopted is, that when a statute may constitutionally operate upon certain persons, or in certain cases, and was not evidently intended to conflict with the constitution, it is not to be held unconstitutional merely because there may be persons to whom or cases in which it cannot constitutionally apply; but it is to be deemed constitutional, and to be construed not to apply to the latter persons or cases, on the ground that courts are bound to presume that the legislature did not intend to violate the constitution.' " 65 Kan. at 250-51 (quoting *Opinion of the Justices*, 41 N.H. 553, 554-55 [1861]).

If K.S.A. 21-4003(1)(d) were intended by the legislature to include an ordained minister's refusal to perform religious sacraments within the term "personal or professional services," then the statute would be constitutionally invalid. We must presume the legislature did not intend such a result. We, therefore, conclude said statute was not intended to apply, and does

not apply, to an ordained minister's refusal, based upon his religious beliefs, to perform a wedding ceremony; and that the trial court did not err in dismissing the criminal charges herein.

The judgment is affirmed.

HOLMES, J., not participating.

HERD, J., concurs in result.