STATE OF KANSAS, *Appellant,* v. JOHN R. DURRANT, *Appellee.*

No. 62,560

STATE OF KANSAS, *Appellant,* v. LON D. and CINDY M. DRESSEL, *Appellees.*

(769 P.2d 1174)

Opinion filed March 3, 1989.

*Gregory G. Hough*, assistant attorney general, argued the cause and *Robert T. Stephan*, attorney general, *Gene M. Olander*, district attorney, and *Kenneth R. Smith*, assistant district attorney, were on the brief for appellant.

*William K. Rork*, of Topeka, argued the cause and was on the brief for appellee.

Opinion filed March 3, 1989.

*Gregory G. Hough*, assistant attorney general, argued the cause and *Robert T. Stephan*, attorney general, was with him on the briefs for appellant.

*William K. Rork*, of Topeka, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

HOLMES, J.: The State of Kansas appeals upon a question reserved in two separate criminal cases in which the district courts of Shawnee County and Osage County held the act providing for taxation of marijuana and controlled substances, K.S.A. 1988 Supp. 79-5201 *et seq.*, unconstitutional as violating the Fifth Amendment privilege against self-incrimination. The cases have been consolidated on appeal.

## Case No. 62,446

*State v. Durrant* is an appeal by the State from Shawnee County District Court pursuant to K.S.A. 22-3601(b)(2) and K.S.A. 22-3602(b).

On four occasions in February and early March 1988, John Durrant allegedly sold cocaine to undercover police officers at a club in Topeka. He was subsequently charged with five counts of possession of a narcotic drug, two counts of failing to pay the tax imposed by K.S.A. 1988 Supp. 79-5201 *et seq.*, one count of unlawful use of weapons, and one count of possessing drug paraphernalia.

The defense filed a motion attacking the constitutionality of K.S.A. 1988 Supp. 79-5201 *et seq.* (the Kansas drug tax act), contending, among other things, that the act violates the Fifth Amendment privilege against · compelled self-incrimination. Following the State's response, the district court held that the act violates the Fifth Amendment privilege against self-incrimination and is therefore unconstitutional. The two counts alleging violations of the act were therefore dismissed. The remaining charges against Durrant were dismissed and the State filed this appeal on June 7, 1988. See *State v. Freeman*, 234 Kan. 278, Syl. ¶ 2, 670 P.2d 1365 (1983).

## Case No. 62,560

*State v. Dressel* is an appeal by the State from Osage County District Court upon a question reserved. K.S.A. 22-3602(b)(3).

Lon D. and Cindy M. Dressel, a young married couple, were arrested after a search of their leased property yielded 174

marijuana plants, 27 packages of marijuana, $6,000 in cash, and a bottle of pills. They were charged with one count of possession of marijuana with intent to sell, one count of failing to comply with the statute imposing a tax on marijuana and controlled substances, one count of possession of a narcotic drug, and one count of possession of drug paraphernalia. Defense counsel filed a motion seeking a determination of the constitutionality of the drug tax act, contending in part that it violates the Fifth Amendment privilege against self-incrimination. Following the State's response, the district court on March 29, 1988, filed its order finding the act unconstitutional as a violation of the Fifth Amendment privilege against self-incrimination. Count II of the complaint was therefore dismissed.

The case went to trial April 25, 1988, on the remaining charges. The defendants were convicted of possession of marijuana with intent to sell and possession of drug paraphernalia. Following return of the jury verdict, the prosecution asked the court to note for the record that the State reserved for appeal the question of whether the tax statute was unconstitutional. The journal entry documenting the conviction and the dismissal of Count II was filed on June 28, 1988, and thereafter the State appealed. While the defendants in case No. 62,560 question the jurisdiction of the court to hear the State's appeal, we conclude that the constitutional issue raised in both appeals is properly before this court for determination.

In both cases the trial courts found K.S.A. 1988 Supp. 79-5201 *et seq.* unconstitutional as a violation of the Fifth Amendment privilege against self-incrimination. The Shawnee County court concluded that the provisions of the act exposed an individual to the risk that information gained by the State might subsequently be used against that individual in criminal prosecutions in the federal court. The Osage County court held that "[t]he immunity clauses of the law fail to give absolute immunity and could lead to investigatory searches, a use which is barred by the [Fifth Amendment] privilege."

At the outset we pause to point out the basic principles applicable when we are called upon to determine the constitutionality of a statute. They were recently stated in *Federal Land Bank of Wichita v. Bott*, 240 Kan. 624, Syl. ¶ 1, 732 P.2d 710 (1987), wherein the court held:

"The constitutionality of a statute is presumed, all doubts must be resolved in favor if its validity, and before the statute may be stricken down, it must clearly appear the statute violates the constitution. Moreover, it is the court's duty to uphold the statute under attack, if possible, rather than defeat it, and if there is any reasonable way to construe the statute as constitutionally valid, that should be done."

See *State v. Barclay*, 238 Kan. 148, 153, 708 P.2d 972 (1985); *State v. Huffman*, 228 Kan. 186, 189, 612 P.2d 630 (1980); *State v. Meinert*, 225 Kan. 816, 817, 594 P.2d 232 (1979), and cases cited therein. The burden of proof is on the party challenging the constitutionality of the statute. *Clark v. Walker*, 225 Kan. 359, 366, 590 P.2d 1043 (1979); *State ex rel. Schneider v. Liggett*, 223 Kan. 610, 616, 576 P.2d 221 (1978).

In both cases in the district courts and on appeal, the defendants were represented by the same counsel, and essentially the same arguments have been presented in both cases. Although the district courts reached the same conclusion, they did so based upon somewhat different reasoning.

K.S.A. 1988 Supp. 79-5201 *et seq.* was passed by the legislature in 1987 and became effective July 1 the same year. The act consists of ten sections designated K.S.A. 1988 Supp. 79-5201 through 79-5210. We will summarize the provisions of the act and only set forth verbatim those sections which we deem controlling in these cases. K.S.A. 1988 Supp. 79-5201 defines "marijuana" and "controlled substance" by reference to the appropriate subsections of K.S.A. 65-4101. A "dealer" is defined by reference to minimum amounts of the drugs involved and applies to the manufacture, production, shipping, transportation, importing, acquiring, or possession when done in violation of Kansas law. The statute obviously does not apply to doctors, hospitals, pharmacists, and others legally possessing the specified substances. K.S.A. 1988 Supp. 79-5202 provides for the imposition of the tax. K.S.A. 1988 Supp. 79-5203 provides for administration of the tax by the director of taxation and requires certain forms to be completed and filed at the time of payment of the tax. K.S.A. 1988 Supp. 79-5204 provides for the issuance of tax stamps, labels, or other official indicia evidencing payment of the tax and directs the usage of the tax stamps, labels, or indicia. Subsection (b) of this statute also states, "Any person may purchase any such stamp, label or other indicia without disclosing

such person's identity." Hereafter, for simplicity, we will refer to the statutory terms "stamp, label, or other indicia" merely by use of the word "stamps" to cover all such evidence of payment. K.S.A. 1988 Supp. 79-5205 sets forth the procedure for assessing the tax by jeopardy assessments and authorizes collection of the tax in any manner provided in article 32 of chapter 79 of Kansas Statutes Annotated.

K.S.A. 1988 Supp. 79-5206 provides in its entirety as follows:

"Neither the director of taxation nor a public employee may reveal facts contained in a report or return required by this act, nor can any information contained in such a report or return be used against the dealer in any criminal proceeding, unless independently obtained, except in connection with a proceeding involving taxes due under this act from the taxpayer making the return."

K.S.A. 1988 Supp. 79-5207 gives the director of taxation the power to examine the books and records of any dealer to determine whether the appropriate tax has been paid and provides the director with subpoena powers. K.S.A. 1988 Supp. 79-5208 provides for a 100% penalty in addition to the tax imposed and further provides criminal penalties of not more than 5 years' imprisonment and/or a fine of not more than $10,000 for violating the act.

K.S.A. 1988 Supp. 79-5209 provides:

"Nothing in this act shall in any manner provide immunity for a dealer from criminal prosecution pursuant to Kansas law."

K.S.A. 1988 Supp. 79-5210 specifically exempts pharmacists and any other person "lawfully in possession of marijuana or a controlled substance" from payment of the tax required by the act.

One other statute is relevant to our consideration of the issues now before the court. K.S.A. 1988 Supp. 75-5133 provides in pertinent part:

"(a) Except as otherwise more specifically provided by law, all information received by the director of taxation from applications for licensure or registration made or returns or reports filed under the provisions of any law imposing any excise tax administered by the director, or from any investigation conducted under such provisions, shall be confidential, and it shall be unlawful for any officer or employee of the department of revenue to divulge any such information except in accordance with other provisions of law respecting the enforcement and collection of such tax, in accordance with proper judicial order and as provided in K.S.A. 74-2424, and amendments thereto.

. . . .

"(e) Any violation of this section shall be a class B misdemeanor, and if the

offender is an officer or employee of this state, such officer or employee shall be dismissed from office."

While most of the reported cases pertaining to the privilege against self-incrimination involve actual oral statements or testimony, it is clear that the Fifth Amendment protection applies to compelled written statements and forms as well as compelled oral testimony. *Albertson v. SACB*, 382 U.S. 70, 79, 15 L. Ed. 2d 165, 86 S. Ct. 194 (1965).

While some have questioned the propriety of a governmental entity imposing a tax upon an illegal act, the United States Supreme Court has held that a tax may be imposed on an activity that is wholly or partially unlawful under state or federal statutes. See, *e.g., Marchetti v. United States*, 390 U.S. 39, 58, 19 L. Ed. 2d 889, 88 S. Ct. 697 (1968). In doing so, however, the government may not violate constitutional restrictions, including the privilege against self-incrimination. On the other hand, the Fifth Amendment privilege against self-incrimination may not properly be asserted if other protection is granted that is broad enough to provide the same scope and effect as the privilege itself. *Marchetti*, 390 U.S. at 58.

Our determination must be whether the drug tax act as written, or as we may construe it within the intent of the legislature, grants sufficient immunity from self-incrimination to provide the Fifth Amendment protections of the Constitution. In analyzing whether a statute violates the Fifth Amendment, the central standard is whether the statute poses substantial and real, and not merely trifling or imaginary, hazards of incrimination. *Marchetti v. United States*, 390 U.S. at 53. The testimony, written or oral, must not only be compelled by the government to justify invocation of the Fifth Amendment privilege, but also must be "incriminating." *Doe v. United States*, 487 U.S. 201, 101 L. Ed. 2d 184, 108 S. Ct. 2341 (1988). Even if direct use of the compelled testimony itself would not be incriminating, the Fifth Amendment may be invoked if the compelled testimony would lead to the discovery of incriminating evidence. *Doe*, 487 U.S. at 208 n. 6, and cases cited therein. Thus, the Fifth Amendment protection applies not only to the potential direct use of the compelled statements, but also applies if such statements might reasonably lead to other incriminating evidence.

In *Hoffman v. United States*, 341 U.S. 479, 486-87, 95 L. Ed.

1118, 71 S. Ct. 814 (1951), the Supreme Court explained the extent of the privilege as to incriminating statements.

"The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime. [Citation omitted.] But this protection must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer. [Citation omitted.] The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination. . . . To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result."

It appears that the legislature, in including 79-5206 in the drug tax act, intended to protect the Fifth Amendment privilege against self-incrimination. In construing the act, we must determine whether the act meets the challenge asserted by these defendants and does protect the privilege against self-incrimination.

Defendants conceded below that the challenged Kansas statutes prohibit public employees from disclosing any information required under the act and prohibit the use of such information in a criminal proceeding, except to enforce the tax act itself. However, they argued that this provision would not bar the federal government from obtaining the records for purposes of pursuing prosecution under federal law. The district court in case No. 62,446 agreed with this argument, concluding that the act thus exposes individuals to a risk of self-incrimination notwithstanding 79-5206.

In *Murphy v. Waterfront Comm'n of New York*, 378 U.S. 52, 79, 12 L. Ed. 2d 678, 84 S. Ct. 1594 (1964), the Supreme Court addressed this very argument, stating:

"[W]e hold the constitutional rule to be that a state witness may not be compelled to give testimony which may be incriminating under federal law unless the compelled testimony and its fruits cannot be used in any manner by federal officials in connection with a criminal prosecution against him. We conclude, moreover, that in order to implement this constitutional rule and accommodate the interests of the State and Federal Governments in investigating and prosecuting crime, the Federal Government must be prohibited from making any such use of compelled testimony and its fruits. This exclusionary rule, while permitting the States to secure information necessary for effective law enforcement, leaves the witness and the Federal Government in substantially the same

position as if the witness had claimed his privilege in the absence of a state grant of immunity."

In an accompanying footnote, the Court stated:

"Once a defendant demonstrates that he has testified, under a state grant of immunity, to matters related to the federal prosecution, the federal authorities have the burden of showing that their evidence is not tainted by establishing that they had an independent, legitimate source for the disputed evidence." 378 U.S. at 79 n.18.

In *In re Birdsong*, 216 Kan. 297, 301, 532 P.2d 1301 (1975), this court adopted an interpretation of *Murphy* to the effect that witnesses granted immunity pursuant to state law may be compelled to testify because the federal government would be barred from using any of the testimony, or its fruits, in a subsequent federal prosecution.

There is clearly no merit to the argument that the information allegedly compelled by the statutes could be used against a dealer in a federal prosecution notwithstanding the protections granted in 79-5206.

The State argues in both cases that the statute does not compel disclosure of incriminating evidence because 79-5204(b) specifically provides that no person shall be required to disclose his/her identity when purchasing stamps. While the forms to be filed in purchasing the tax stamps provide spaces for the name, address, and signature of the purchaser, the directions and information which accompany the order forms make it clear that the information is not required and that any information which is supplied is confidential.

The provisions of the drug tax act do not require dealers or other persons purchasing the stamps to disclose their identity. Even if their identity is ascertained through visual observation or otherwise, the statutes provide the information must remain confidential. While the arguments of the State that the act does not compel incriminating testimony may have merit, we will, for purposes of construing the constitutionality of the act, assume that it does require the disclosure of incriminating information.

Defendants have argued that even though 79-5206 makes all information submitted by the purchaser of tax stamps confidential and inadmissible in other criminal proceedings, the act provides no sanctions against public employees who violate the statutory prohibition by revealing such facts. However, K.S.A. 1988 Supp. 75-5133(e) imposes a criminal penalty on those who

divulge information provided in returns filed under the provisions of any tax statute which imposes an excise tax administered by the director of taxation. It also provides that a state officer or employee who violates the confidentiality provisions shall be dismissed from office. It appears that these provisions would apply to any information released or utilized in violation of 79-5206. In *United States v. Sahadi*, 555 F.2d 23, 26-27 (2d Cir. 1977), the defendants argued that the absence of specific penalty provisions punishing Treasury Department officials for illegally disclosing information obtained under 26 U.S.C. § 4401 *et seq.* (1982) creates a real and appreciable danger of self-incrimination. The court rejected the argument, pointing out that 18 U.S.C. § 1905 (1982) mandates criminal penalties and loss of employment for persons who make unauthorized disclosure of confidential government information. This argument of the defendants lacks merit.

Defendants rely heavily upon the Kansas case of *State v. Greenberg*, 4 Kan. App. 2d 403, 607 P.2d 530 *rev. denied* 228 Kan. 807 (1980), and a series of United States Supreme Court cases. Greenberg was convicted of operating an uninsured motor vehicle, and he appealed. Among other things, he challenged as unconstitutional the statute requiring drivers involved in auto accidents to disclose certain information to police. The Court of Appeals upheld the statute, reasoning that, since the primary objective of the statute was regulatory and not the enforcement of criminal laws, the proper approach was to balance the government's need for the information against the risk of self-incrimination. In dictum, the court noted that where the reporting requirement is part of a scheme aimed primarily at enforcing the criminal law, the statutes are "invariably stricken down on Fifth Amendment grounds." 4 Kan. App. 2d at 407.

In Case No. 62,446, the State concedes in its brief that the primary purpose of K.S.A. 1988 Supp. 79-5201 *et seq.* is to discourage or eliminate drug dealing. The district court in that case opined that the challenged statutes therefore fall within the same category as those referenced in *Greenberg* as invariably flawed on Fifth Amendment grounds. It appears clear that the drug tax act does target a selective group inherently suspect of criminal activity—drug dealers, or those who illegally possess large quantities of marijuana and/or other controlled substances.

However, contrary to the *Greenberg* dictum, that does not *necessarily* mean that the act is constitutionally flawed under the Fifth Amendment. The validity of the statutes depends upon the scope of the immunity granted under the act and not upon the fact that the statutes are aimed at enforcement of the criminal laws and may target a selective group inherently suspect of criminal activity. The ultimate test which must be applied is whether the immunity granted is "so broad as to have the same extent in scope and effect" as the Fifth Amendment privilege against self-incrimination. *Marchetti v. United States*, 390 U.S. at 58; *Counselman v. Hitchcock*, 142 U.S. 547, 585, 35 L. Ed. 1110, 12 S. Ct. 195 (1892).

The United States Supreme Court cases relied upon by the defendants, while addressing the issue of the privilege against self-incrimination arising from a number of somewhat analogous statutes, are clearly distinguishable and not controlling here.

*Albertson v. SACB*, 382 U.S. 70, involved statutes requiring members of the Communist Party to register, under certain circumstances, with the Attorney General. The registration forms required an admission of membership in the Communist Party, which constituted a violation of certain criminal statutes. Although the Subversive Activities Control Act contained provisions against use of incriminating information disclosed in the registration process, the Supreme Court found that Albertson properly invoked his Fifth Amendment privilege because the Act did "not preclude the use of the admission as an investigatory lead, a use which is barred by the privilege." 382 U.S. at 80.

*Marchetti v. United States*, 390 U.S. 39, and *Grosso v. United States*, 390 U.S. 62, 19 L. Ed. 2d 906, 88 S. Ct. 709 (1968), are companion cases involving the failure to register and pay excise and occupational taxes on wagering. Marchetti and Grosso were convicted of violations of the federal wagering tax statutes. In finding that compliance with the statutes violated the Fifth Amendment privilege against self-incrimination, the Supreme Court stated in *Marchetti*:

"Information obtained as a consequence of the federal wagering tax laws is readily available to assist the efforts of state and federal authorites to enforce these penalties. Section 6107 of Title 26 requires the principal internal revenue offices to provide to prosecuting officers a listing of those who have paid the occupational tax. Section 6806(c) obliges taxpayers either to post the revenue stamp 'conspicuously' in their principal places of business, or to keep it on their

persons, and to produce it on the demand of Treasury officers. Evidence of the possession of a federal wagering tax stamp, or of payment of the wagering taxes, has often been admitted at trial in state and federal prosecutions for gambling offenses; such evidence has doubtless proved useful even more frequently to lead prosecuting authorities to other evidence upon which convictions have subsequently been obtained. Finally, we are obliged to notice that a former Commissioner of Internal Revenue has acknowledged that the Service 'makes available' to law enforcement agencies the names and addresses of those who have paid the wagering taxes, and that it is in 'full cooperation' with the efforts of the Attorney General of the United States to suppress organized gambling." 390 U.S. at 47-48.

Not only was there no confidentiality imposed upon the information obtained under the Act, the information was intentionally made available to other federal agencies and states to assist in their prosecution of other crimes.

*Haynes v. United States*, 390 U.S. 85, 19 L. Ed. 2d 923, 88 S. Ct. 722 (1968), involved statutes which required the registration of certain types of prohibited firearms with the Secretary of the Treasury. Registration as required by the National Firearms Act could lead directly to the prosecution of a separate criminal offense. In a prosecution under one section of the Act, Haynes invoked his privilege against self-incrimination based upon a failure to register the firearm under another section of the Act. The Court held that Haynes could properly invoke his privilege because the furnishing of the information required of registrants was "likely to facilitate their arrest and eventual conviction." 390 U.S. at 97.

In *Leary v. United States*, 395 U.S. 6, 23 L. Ed. 2d 57, 89 S. Ct. 1532 (1969), the Supreme Court was faced with a Fifth Amendment challenge to the federal Marijuana Tax Act (26 U.S.C. § 4741 *et seq.* [1982]). In an exhaustive opinion, the Supreme Court found that one significant purpose of the act was the furnishing of information to prosecutors for use in other criminal prosecutions aimed at illegal drug traffic. The Supreme Court specifically referred to its earlier holdings in *Marchetti, Grosso,* and *Haynes,* and found that Leary's claim of privilege was properly invoked. In all of these cases, there was insufficient protection against use in other criminal prosecutions of information obtained by compliance with the various statutes. The Supreme Court refused to construe the various statutes in question to provide the necessary immunity from other prosecutions, stating that it was apparent that one of the objectives of Congress

was to facilitate criminal prosecution based upon information obtained from compliance with the statutes.

The Kansas drug tax act presents an entirely different situation. The act specifically grants protection against use of any information gained through compliance with the act in all criminal prosecutions, except those involving violations of the act itself. Thus, it appears to us that the legislature contemplated the act should provide for protection against any violation of the Fifth Amendment privilege against self-incrimination. The confidentiality provisions of the act itself are strengthened by K.S.A. 1988 Supp. 75-5133. K.S.A. 1988 Supp. 79-5209, which states that nothing in the act shall provide immunity from other criminal prosecution, does not dilute or affect the confidentiality provided by 79-5206.

The only remaining question is whether the immunity extended by the statute "'is so broad as to have the same extent in scope and effect' as the privilege itself." *Marchetti*, 390 U.S. at 58.

The district court in case No. 62,560 held that the statute fails to provide absolute immunity and does not prohibit use of the information for investigatory leads, a use the court held was barred by the privilege. Defendants also raise this argument on appeal. For a statutory grant of immunity to be coextensive with the privilege against self-incrimination, it must grant not only use immunity, or protection from the direct use of compelled incriminatory information, but also derivative-use immunity, which prohibits use of any such information for investigatory purposes leading to other evidence of criminal activity. This court not only has the authority, but also the duty, to construe a statute in such a manner that it is constitutional if the same can be done within the apparent intent of the legislature in passing the statute. To accomplish this purpose the court may read the necessary judicial requirements into the statute. *In re Adoption of Baby Boy L.*, 231 Kan. 199, Syl. ¶ 13, 643 P.2d 168 (1982); *State v. Motion Picture Entitled "The Bet,"* 219 Kan. 64, 547 P.2d 760 (1976); *State v. Gunzelman,* 210 Kan. 481, 502 P.2d 705 (1972); *State v. Hart,* 200 Kan. 153, 434 P.2d 999 (1967). We think it is obvious, and we so hold, that the legislature, by its enactment of 79-5206 as a part of the act, intended to extend not only use immunity but also derivative-use immunity to any

person complying with the act. As construed, the immunity granted by the act is at least coextensive with the privilege against self-incrimination provided by the Fifth Amendment of the United States Constitution, and the act as so construed is constitutional.

We hold that, under the terms of K.S.A. 1988 Supp. 79-5201 *et seq.*, all information obtained through compliance with the act is confidential and may not be used as evidence in the prosecution for any crimes, other than the enforcement of the act itself. We further hold that any evidence obtained through the use of any confidential information gained through compliance with the act is likewise confidential and inadmissible in the prosecution of any criminal offense, other than for the enforcement of the Kansas drug tax act itself.

Finally, the State, in its reply brief in case No. 62,560, relies heavily on a recent Minnesota case upholding the constitutionality of virtually identical statutes over many of the same arguments made by the defendants in this case. See *Sisson v. Triplett*, 428 N.W.2d 565 (Minn. 1988). The opinion in that case is highly persuasive authority that our statutes do not violate the privilege against compelled self-incrimination. While much that is said in *Sisson* is applicable and would be worthy of repetition here, we see no reason to further extend an already too lengthy opinion.

We have considered all of the various arguments presented by the defendants in both of these cases and we conclude that the Kansas drug tax act, K.S.A. 1988 Supp. 79-5201 *et seq.*, as construed herein does not violate the Fifth Amendment prohibition against self-incrimination and is not unconstitutional on such grounds.

The judgment is reversed in *State v. Durrant*, case No. 62,446, and the case is remanded for further proceedings. The appeal in *State v. Dressel*, case No. 62,560, is sustained.