**STATE of Utah, Plaintiff and Respondent,**

v.

**David DAVIS, Defendant and Appellant.**

**No. 890009–CA.**

Court of Appeals of Utah.

Feb. 12, 1990.

---

Stephen R. McCaughey and Patricia Geary, Salt Lake City, for defendant and appellant.

R. Paul Van Dam and Sandra Sjogren, Salt Lake City, for plaintiff and respondent.

Before DAVIDSON, BILLINGS and ORME, JJ.

BILLINGS, Judge:

Defendant David Davis was charged with possession of a controlled substance without the required tax stamps affixed, a third degree felony, in violation of Utah Code Ann. § 59–19–105 (1988). Defendant filed a motion to dismiss the charge, claiming that section 59–19–105 of the Utah Drug Stamp Tax Act[1] is unconstitutional. The trial court denied his motion and consequently defendant entered a conditional plea of no contest.

Defendant argues on appeal that (1) the Utah Drug Stamp Tax Act violates his privilege against self-incrimination under the fifth amendment of the United States Constitution and article I, section 12 of the Utah Constitution; and (2) the Utah Drug Stamp Tax Act is void for vagueness under the fourteenth amendment to the United States Constitution and article I, section 7 of the Utah Constitution. We affirm.

---

1. Utah Code Ann. §§ 59–19–101 to –107 (1988).

A constitutional challenge to a statute presents a question of law, and thus, we review the trial court's conclusion, that the Utah Drug Stamp Tax Act is constitutional, for correctness. *See Nephi City v. Hansen*, 779 P.2d 673, 674 (Utah 1989); *Provo City Corp. v. Willden*, 768 P.2d 455, 456 (Utah 1989); *see also Scharf v. BMG Corp.*, 700 P.2d 1068, 1070 (Utah 1985).

■■■ Furthermore, we recognize that it is the prerogative of the legislature to create the law. *Zamora v. Draper*, 635 P.2d 78, 80 (Utah 1981). Thus, we afford the legislature's enactments a presumption of validity. *Id.; Greaves v. State*, 528 P.2d 805, 806–07 (Utah 1974); *Pride Club, Inc. v. State*, 25 Utah 2d 333, 481 P.2d 669, 670 (Utah 1971). We will not strike down a statute unless it appears to be unconstitutional beyond a reasonable doubt. *Greaves*, 528 P.2d at 807; *Pride Club*, 481 P.2d at 670. Nor will we declare a statute unconstitutional if we can find any reasonable basis to bring it within a constitutional framework. *Greaves*, 528 P.2d at 807; *State v. Packard*, 122 Utah 369, 250 P.2d 561, 563 (1952).

## I. PRIVILEGE AGAINST SELF–INCRIMINATION

Defendant contends the Utah Drug Stamp Tax Act requires him to incriminate himself in violation of the fifth amendment of the United States Constitution.[2] He asserts that proof he purchased and posted the stamps could be used to provide a link in the chain of evidence in a subsequent drug prosecution against him. Defendant claims that the mere purchase of the stamps is an admission of criminal behavior because the law only applies to individuals unlawfully in possession of controlled substances.[3]

The state argues, on the other hand, that the Utah Drug Stamp Tax Act does not require stamp purchasers to identify themselves or even to appear in person to pay the tax and obtain the stamps.[4] Thus, the state claims the tax commission, under the Utah statutory scheme, receives no incriminating information to disclose to prosecutors.

The United States Supreme Court has long held that the government may tax illegal activities. *See License Tax Cases*, 5 Wall. 462, 471–73, 18 L.Ed. 497, 501 (1867); *Marchetti v. United States*, 390 U.S. 39, 44, 88 S.Ct. 697, 700, 19 L.Ed.2d 889 (1968). However, the government may not establish a method of taxation that violates the fifth amendment. *Id.* at 44, 88 S.Ct. at 700. In order to evaluate defendant's claims, we first review the scope of protection afforded by the fifth amendment and then focus on prior decisions discussing the relationship between taxes levied on illegal activities and the constitutional privilege against self-incrimination.

■■■ The fifth amendment to the United States Constitution provides: "No person shall be ... compelled in any criminal case to be a witness against himself...." This right arises when the government requests

2. Although defendant argues that his rights against self-incrimination under article I, section 12 of the Utah Constitution were also violated, he does not contend that our analysis or the result should be different under the Utah Constitution from that under the federal constitution. Furthermore, defendant's analytical approach is restricted to the fifth amendment. Therefore, we do not address defendant's state constitutional claim separately. *Cf. State v. Webb*, 779 P.2d 1108, 1111 n. 4 (Utah 1989); *State v. Lafferty*, 749 P.2d 1239, 1247 n. 5 (Utah 1988); *State v. Barela*, 779 P.2d 1140, 1142 n. 1 (Utah Ct.App.1989).

3. In our analysis, we focus on disclosure of the purchaser's identity at the time of the purchase of the stamps. Defendant did not purchase stamps and thus the issue of whether evidence of posting the stamps is incriminating is not before us. *See Sisson v. Triplett*, 428 N.W.2d 565, 572 n. 7 (Minn.1988) (the court refused to resolve the possession issue because the possession of stamps was not raised by the facts of the case, thus the defendant's concern was "purely speculative."). *See* discussion of standing in Section III.

4. Utah Code Ann. § 59–19–105(3) (1988) provided:

Payments required by this chapter shall be made to the commission on forms provided by the commission. Dealers are not required to give their name, address, Social Security number, or other identifying information on the form. The commission shall collect all taxes imposed under this chapter.

information that will subject a person to criminal liability, *Garner v. United States*, 424 U.S. 648, 655, 96 S.Ct. 1178, 1183, 47 L.Ed.2d 370 (1976), and applies to compelled written as well as oral testimony. *Albertson v. Subversive Activities Control Board*, 382 U.S. 70, 78, 86 S.Ct. 194, 198, 15 L.Ed.2d 165 (1965); *State v. Durrant*, 244 Kan. 522, 769 P.2d 1174, 1179, *cert. denied*, — U.S. ——, 109 S.Ct. 3254, 106 L.Ed.2d 600 (1989). "The central standard for the privilege's application has been whether the claimant is confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." *Marchetti*, 390 U.S. at 53, 88 S.Ct. at 705 (quoting *Rogers v. United States*, 340 U.S. 367, 374, 71 S.Ct. 438, 442, 95 L.Ed. 344 (1951)).

■ The United States Supreme Court, in defining the scope of the privilege's protection, stated:

> The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime.

*Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). However, a defendant may not successfully assert a fifth amendment challenge if other protection is granted to him that is broad enough to provide the same scope of protection as the privilege. *Marchetti*, 390 U.S. at 58, 88 S.Ct. at 707.

The United States Supreme Court has focused on the privilege against self-incrimination in the context of the government's ability to tax illegal conduct in four cases: *Marchetti v. United States*, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); *Grosso v. United States*, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968); *Haynes v. United States*, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968); *Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969).

In *Marchetti*, the Court was asked to determine whether a federal wagering reg-

istration and tax law [5] was unconstitutional under the fifth amendment. The registration provision required taxpayers to register with the Internal Revenue Service, providing their names and addresses and, additionally, the names of their employees and agents. Taxpayers were required to keep daily records showing the gross amount of the wagers and permit inspection of their books. *Id.* 390 U.S. at 43, 88 S.Ct. at 700. The Court noted that each IRS office was instructed to "maintain for public inspection a listing of all who have paid the occupational tax, and to provide certified copies of the listing upon request to any state or local prosecuting officer." *Id.* The law imposed no restrictions on the use of the information on the return. *Id.* at 47, 88 S.Ct. at 702. In fact, the IRS provided the information to prosecuting authorities on a regular basis. *Id.* at 48, 88 S.Ct. at 702.

The *Marchetti* Court identified three criteria for determining the constitutionality of a tax statute attacked on fifth amendment grounds: (1) whether the tax is aimed at individuals "inherently suspect of criminal activities," and whether the taxed activity is in an area "permeated with criminal statutes," *id.* at 47, 88 S.Ct. at 702 (quoting *Albertson v. Subversive Activities Control Board*, 382 U.S. 70, 79, 86 S.Ct. 194, 199, 15 L.Ed.2d 165 (1965)), (2) whether an individual is "required, on pain of criminal prosecution, to provide information which [the individual] might reasonably suppose would be available to prosecuting authorities," *id.* 390 U.S. at 48, 88 S.Ct. at 703, (3) whether such information "would surely prove a significant 'link in a chain' of evidence tending to establish [the individual's] guilt." *Id.* The Court found the wagering registration and tax provisions at issue met the test and thus violated the fifth amendment. *Id.* at 60, 88 S.Ct. at 709.

The government argued in *Marchetti*, as the state does here, that the Supreme Court should read restrictions into the statute prohibiting the use of information developed as a result of payment of the wagering tax by federal and state prosecuting

**5.** *See* 26 U.S.C. §§ 4401, 4411, 4412, 6107, 6806(c) (1954).

authorities. *Id.* at 58, 88 S.Ct. at 707. This limitation would then provide protection broad enough to have the same effect as the privilege itself, and render the statutory scheme constitutional. The United States Supreme Court found the government's suggestion, in principle, attractive, but felt precluded from imposing restrictions directly contrary to the statutory language providing for disclosure to prosecutors. *Id.* at 59–60, 88 S.Ct. at 708–09. The Court felt it inappropriate because the wagering tax system made "quite plain that Congress intended information obtained as a consequence of registration and payment of the occupational tax to be provided to interested prosecuting authorities." *Id.* at 58–59, 88 S.Ct. at 708.

The United States Supreme Court evaluated a different provision of the same wagering tax scheme—a federal excise tax on wagering—in *Grosso v. United States,* 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968). In addition to the requirements of the wagering tax litigated in *Marchetti,* the wagering excise tax also required taxpayers to submit monthly returns detailing their wagering activities. *Grosso,* 390 U.S. at 65, 88 S.Ct. at 712. The Court focused in its decision on whether the defendant was "obliged, on pain of criminal prosecution, to provide information which would readily incriminate him, and which he may reasonably expect would be provided to prosecuting authorities." *Id.* at 66–67, 88 S.Ct. at 713. Based upon a record which substantiated that prosecuting authorities had been regularly provided with the information, the Court found that "[t]hese hazards of incrimination can only be characterized as 'real and appreciable.'" *Id.* at 67, 88 S.Ct. at 713 (quoting *Reg. v. Boyes,* 1 B. & S. 311, 330 (1861); *Brown v. Walker,* 161 U.S. 591, 599–600, 16 S.Ct. 644, 647–48, 40 L.Ed. 819 (1896)). This portion of the wagering statute contained no "statutory instruction, as there [was] for the occupational tax [in *Marchetti*], that state or local prosecuting officers be provided listings of those who have paid the excise tax." *Id.* at 66, 88 S.Ct. at 712. However, the Court noted, in upholding a fifth amendment challenge, that "neither has Congress imposed explicit

restrictions upon the use of information obtained as a consequence of payment of the tax." *Id.* The Court also emphasized that the record indicated that the IRS had regularly provided prosecuting authorities with this incriminating information. *Id.*

Again, as in *Marchetti,* the government urged the *Grosso* Court to interpret the act to prevent prosecuting authorities from using the information disclosed under the statutory scheme and, thus, uphold its constitutionality. *Id.* at 69, 88 S.Ct. at 714. The *Grosso* Court found this approach inappropriate because it would lead to the incongruous result that restrictions on disclosure and use of information by prosecuting authorities would apply to one portion of the wagering tax statutory scheme and not another. The Court emphasized that the challenged act was "'an integral part' of the same [taxing] system" that the *Marchetti* Court had refused to restrict. *Id.* (quoting H.R.Rep. No. 586, 82d Cong., 1st Sess., 60).

In *Haynes v. United States,* 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968), the defendant challenged registration and taxing provisions applicable to certain classes of firearms. The firearm registration requirement was "directed principally at those persons who [had] obtained possession of a firearm without complying with the Act's other requirements, and who therefore [were] immediately threatened by criminal prosecutions.... They [were] unmistakably persons 'inherently suspect of criminal activities.'" *Id.* at 96, 88 S.Ct. at 730 (quoting *Albertson v. Subversive Activities Control Board,* 382 U.S. 70, 79, 86 S.Ct. 194, 199, 15 L.Ed.2d 165 (1965)).

Furthermore, the act required a registrant to give his name, address, date of birth, Social Security number, place of business or employment, whether he had been convicted of a felony, and a full description of the firearm and the place where the firearm was kept. *Id.* The Court found the act met the *Marchetti* test, *id.* at 98–99, 88 S.Ct. at 730–31, and reversed defendant's conviction. *Id.* at 100, 88 S.Ct. at 732. Again, the Court refused to avoid the constitutional problem by restricting federal and state authorities from using the

information because the statutory scheme explicitly provided for disclosure of the information collected to prosecuting authorities. *Id.* at 99–100, 88 S.Ct. at 731–32.

Finally, in *Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), the United States Supreme Court dealt with a constitutional challenge to a portion of the federal Narcotic Drugs Import and Export Act[6] and the federal Marihuana Tax Act.[7] This legislation was similar to the wagering tax system in that it required those paying the tax to register on tax forms, listing their names and addresses. *Id.* at 14, 89 S.Ct. at 1536. The Court found that compliance with the act would create a "real and appreciable" hazard of incrimination. *Id.* at 18, 89 S.Ct. at 1539. The Court, after reviewing the statutory language and legislative history, concluded, as it had in *Marchetti* and *Grosso*, that "the furnishing of information to interested prosecutors was a 'significant element of Congress' purposes in adopting' the statutes" and, thus, refused a construction restricting disclosure. *Id.* at 26, 89 S.Ct. at 1543.

■ We examine the Utah Drug Stamp Tax Act under *Marchetti* to determine (1) whether the tax is aimed at individuals "inherently suspect of criminal activities," (2) whether an individual is "required on pain of criminal prosecution to provide information" which he might reasonably think would be made available to prosecuting authorities, and (3) whether the information would provide "a significant link in a chain of evidence tending to establish the individual's guilt."

Section 59–19–105 provided:

(1) When a dealer purchases, acquires, transports, or imports into this state marihuana or controlled substances, he shall permanently affix the official indicia on the marihuana or controlled substances evidencing the payment of the tax required under this chapter. No stamp or other official indicia may be used more than once.

(2) Taxes imposed upon marihuana or controlled substances by this chapter are due and payable immediately upon acquisition or possession in this state by a dealer.

(3) Payments required by this chapter shall be made to the commission on forms provided by the commission. Dealers are not required to give their name, address, Social Security number, or other identifying information on the form. The commission shall collect all taxes imposed under this chapter.

Utah Code Ann. § 59–19–105 (1988).[8]

The first step of the *Marchetti* test is clearly met as the statute applies only to those dealing in illegal controlled substances.

The second step involves a closer question. The Utah Drug Stamp Tax Act, unlike the taxing provisions found defective in *Marchetti, Grosso, Haynes,* and *Leary,* does not require persons purchasing the stamps to disclose their identity. Further, there is nothing in the record to indicate that the identity of purchasers has been provided to prosecuting authorities historically. *See, e.g., Grosso,* 390 U.S. at 66, 88 S.Ct. at 712. Thus, there is substantially less danger that information gathered as a result of defendant's compliance with the statute would reach prosecuting authorities. We need not decide whether there is nevertheless still a "substantial and real" risk that defendant's identity would be observed if he purchased the stamps and whether there is a real risk this indirect identity information would be communicated to law enforcement personnel. This is so because, even assuming the second and third steps of the *Marchetti* test were met, we can still save the Utah Drug Stamp Tax Act—as is our duty under *Greaves v. State,* 528 P.2d 805, 807 (Utah 1974)—if we interpret the statutory scheme to prevent the use of any identity information obtained by prosecuting authorities as a result of a person's compliance with the act. This protection " 'is so broad as to have the

---

**6.** *See* 21 U.S.C. § 176a(2)(h) (1956) (repealed 1970).

**7.** *See* 26 U.S.C. §§ 4741–4744 (1954) (repealed 1970).

**8.** Section 59–19–105 was amended in 1989. *See* note 10, *infra.*

same extent in scope and effect' as the privilege [against self-incrimination] itself." *Marchetti*, 390 U.S. at 58, 88 S.Ct. at 708 (quoting *Counselman v. Hitchcock*, 142 U.S. 547, 585, 12 S.Ct. 195, 206, 35 L.Ed. 1110 (1892)). Unlike the federal statutes in *Marchetti, Grosso*, and *Haynes* where a limiting construction was rejected, the Utah Drug Stamp Tax Act has no provision providing for disclosure of any identifying information to prosecuting authorities.[9]

Finally, defendant points to no statutory language or legislative history to indicate that the Utah Legislature intended the information be disclosed and used by prosecuting authorities. *Compare Marchetti*, 390 U.S. at 58–59, 88 S.Ct. at 707–08; *Grosso,* 390 U.S. at 68, 88 S.Ct. at 713; *Leary,* 395 U.S. at 16, 89 S.Ct. at 1537.

We simply cannot say that one of the Utah Legislature's objectives in enacting the Utah Drug Stamp Tax Act was to "facilitate criminal prosecutions based upon information obtained from compliance with the statutes." *State v. Durrant*, 244 Kan. 522, 769 P.2d 1174, 1182, *cert. denied*, —— U.S. ——, 109 S.Ct. 3254, 106 L.Ed.2d 600 (1989).

In fact, the Utah Legislature has subsequently clarified its intention on the issue of the use of identity information gained under the Utah Drug Stamp Tax Act by its 1989 amendment to the act which explicitly prohibits disclosure and provides confidentiality.[10] *See State v. Bishop*, 753 P.2d

439, 486 (Utah 1988) ("When a statute is amended, the amendment is persuasive evidence of the legislature's intent when it passed the former, unamended statute."); *see also State v. Barnett*, 142 Ariz. 592, 691 P.2d 683, 687 (1984) (subsequent legislation, while not controlling, "is a strong indication of the legislature's original intent"); *Board of County Comm'rs v. CMC of Nev., Inc.*, 99 Nev. 739, 670 P.2d 102, 106 (1983) ("amendment is persuasive evidence of the purpose and intent of the legislature"); *Stratman v. Admiral Beverage Corp.*, 760 P.2d 974, 986–87 (Wyo.1988) (subsequent legislation may be used as aid to interpret ambiguous statute).

Based upon the foregoing, we find the pre-amendment Utah Drug Stamp Tax Act can be "found to come within a constitutional framework," *Greaves*, 528 P.2d at 807, by construing it to prohibit the use of any information gained as a result of a purchaser's compliance with the act to establish a link in the chain of evidence in a subsequent drug prosecution. As a result of this stricture, we find that the scope of the immunity provided by the Utah Drug Stamp Tax Act is broad enough to give the same protections provided by the fifth amendment and thus uphold its constitutionality.[11]

## II. VOID FOR VAGUENESS

Defendant also claims the Utah Drug Stamp Tax Act is unconstitutionally vague under the due process clauses of the feder-

---

**9.** Although there was no explicit provision for disclosure of the tax form information under the wagering excise tax in *Grosso*, the United States Supreme Court held it could not restrict the disclosure because the wagering excise tax was part of the same statutory scheme as the wagering occupational tax, which contained a disclosure provision. *See Grosso*, 390 U.S. at 69, 88 S.Ct. at 714.

**10.** Utah Code Ann. § 59–19–105 (1989) provides, in pertinent part:
(3) Payments required by this chapter shall be made to the commission on forms provided by the commission.
(4)(a) A dealer is not required to give his name, address, Social Security number, or other identifying information on the form.
  (b) The commission or its employees may not reveal any facts contained in any report, form, or return required by this chapter or any information obtained from a dealer.

(c) None of the information contained in a report, form, or return or otherwise obtained from a dealer in connection with this section may be used against the dealer in any criminal proceeding unless it is independently obtained, except in connection with a proceeding involving taxes due under this chapter from the dealer making the return. This subsection supersedes any provision to the contrary.
(d) A person who discloses information in violation of this subsection is guilty of a class A misdemeanor.
Utah Code Ann. § 59–19–105 (1989).

**11.** We note that three states have ruled on the constitutionality of drug stamp tax statutes. However, all of the statutes considered are similar to Utah's amended statute containing provisions on confidentiality and/or a prohibition against the use of the information for prosecution purposes. *See State v. Durrant*, 244 Kan.

**524**

al and Utah constitutions. He argues that even though the law states the stamps must be affixed to the controlled substances, it does not state where on the package the stamps are to be placed. He asserts that the absence of this directory instruction results in his being unable to conform his conduct to the statute and that it may also result in arbitrary and discriminatory enforcement. He points out that Utah Code Ann. § 59-19-104(1) (1988) instructed the tax commission to adopt a uniform system for affixing the indicia, yet the tax commission has failed to do so.

■ We find that defendant does not have standing to challenge the vagueness of this portion of the Utah Drug Stamp Tax Act. Utah courts have long held that "before a party may attack the constitutionality of a statute he must be adversely affected by that very statute.... '[T]he court will not listen to an objection made as to the constitutionality of an act by parties whose rights are not specifically affected.'" *Pride Club, Inc. v. State*, 25 Utah 2d 333, 481 P.2d 669, 671 (1971) (quoting *State v. Kallas*, 97 Utah 492, 94 P.2d 414, 420 (1939)). Further, "a person affected by one portion of the statute may not plead

the invalidity of another portion of the same statute not applicable to his case." *Cavaness v. Cox*, 598 P.2d 349, 352 (Utah 1979).

■ Defendant did not pay the tax and receive the stamps. He could not have been confused about where to place those stamps. He was not charged with placing the stamps in the wrong area of the controlled substance. He was charged with the failure to pay the tax and obtain the stamps and, thus, was not injured by the provision concerning where to place the stamps.[12]

In conclusion, we find the Utah Drug Stamp Tax Act does not violate the fifth amendment and that defendant does not have standing to challenge the act as vague under the due process clause of the United States and Utah Constitutions. Thus, we affirm defendant's conviction.

DAVIDSON and ORME, JJ., concur.

---

522, 769 P.2d 1174, *cert. denied*, — U.S. —, 109 S.Ct. 3254, 106 L.Ed.2d 600 (1989) (Kansas Supreme Court noted taxpayers did not have to disclose their identity. *Id.* at 1180. But the court emphasized that even if the identity of the dealer could be ascertained some other way, the statute required that the information remain confidential, *id.*, and thus concluded that the protections included in the statute fell within fifth amendment boundaries. *Id.* at 1183.); *Sisson v. Triplett*, 428 N.W.2d 565 (Minn.1988) (Minnesota Supreme Court distinguished the United States Supreme Court cases previously discussed, noted that the dealers did not have to submit the form and pay the tax in person or reveal their identities, and found that the confidentiality provisions in the statute adequately protected the defendant from self-incrimination. *Id.* at 574.); *State v. Roberts*, 384 N.W.2d 688 (S.D.1986) (South Dakota Supreme Court found the confidentiality provisions in the statute inadequate. The significant difference in *Roberts* is that while the statute purports to protect the dealer with the language, "[s]uch prosecution may not, however, be initiated or facilitated by the disclosure of confidential information," another provision of the same act allows for the disclosure of the information to state and local agencies upon written request. *Id.* at 690.).

**12.** Even if defendant had standing to assert the vagueness of the statute, we would find his claim without merit. In order to pass due process muster, statutes must "define a criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983); *see also State v. Fontana*, 680 P.2d 1042, 1050 (Utah 1984); *Greaves v. State*, 528 P.2d 805, 807 (Utah 1974); *State v. Packard*, 122 Utah 369, 250 P.2d 561, 564 (Utah 1952).

The law at issue imposes criminal sanctions for failing to affix the official indicia to illegal drugs. The criminal sanction imposed is not for misplacing the stamps, but for failing to affix them at all. The failure to affix the stamps to controlled substances is clearly a violation of the law and puts all those who deal in controlled substances on notice that their failure to place the stamps on the controlled substance will result in prosecution. Further, the law is sufficiently definite to instruct law enforcement agents where to look for the stamps—on the drugs and, thus, they may not arbitrarily or discriminatorily enforce the statute as there is no violation if the stamps are placed anywhere on the drugs.