576 So.2d 771 (1991)
Dr. & Mrs. Howard SHERIDAN, Margaret Marino, Mr. & Mrs. Nick Mallous, Dr. & Mrs. William Wolffer, and Environmental Confederation of Southwest Florida, Appellants,
v.
DEEP LAGOON MARINA and State of Florida, Department of Environmental Regulation, Appellees.
No. 89-2517.
District Court of Appeal of Florida, First District.
February 26, 1991.
Rehearing Denied April 18, 1991.
Thomas W. Reese, St. Petersburg, for appellants.
*772 Joseph W. Landers, Jr. and Richard A. Lotspeich of Landers & Parsons, P.A., Tallahassee, for appellee, Deep Lagoon Marina.
Carol A. Forthman, Deputy Gen. Counsel, Florida Dept. of Environmental Regulation, Tallahassee, for appellee, Florida Dept. of Environmental Regulation.
ALLEN, Judge.
The appellee, Deep Lagoon Marina (the applicant), applied to the appellee, the Department of Environmental Regulation (the department), for a Chapter 403, Florida Statutes, dredge and fill permit, and for a certification of compliance with the federal Clean Water Act (33 U.S.C. §§ 1251 et seq.; P.L. 92-500, as amended) pursuant to Section 1341 of Title 33, United States Code. The appellants, Dr. and Mrs. Howard Sheridan, Ms. Margaret Marino, Mr. and Mrs. Nick Mallous, and Dr. and Mrs. William Wolffer, who live near the site of the proposed project, petitioned for a formal administrative hearing to contest the preliminary decision of the department to issue the requested permit and certification. The appellant, Environmental Confederation of Southwest Florida, was granted leave to intervene in the proceedings. Following a Section 120.57(1), Florida Statutes, hearing, the hearing officer recommended that the department grant the requested permit, but, reasoning that she lacked authority to adjudicate the certification question, she declined to address the appellants' argument that the dredge and fill operation would not comply with the federal Clean Water Act. The department then issued its final order adopting the recommended order. In this appeal from the final order, we affirm that portion of the final order authorizing issuance of the state dredge and fill permit, but we set aside that portion of the final order in which the department determined that the certification question could not be adjudicated in the administrative proceeding. We remand for further proceedings on the appellants' challenge to the department's certification of compliance with the federal Clean Water Act.
In December of 1986, the applicant applied to the department for a Chapter 403, Florida Statutes, dredge and fill permit, and for a 33 U.S.C. § 1341 water quality certification under the Clean Water Act. The applicant proposed to conduct a dredge and fill operation in order to expand its existing full-service marina in Deep Lagoon, which is located in an arm of the Caloosahatchee River in Lee County, Florida. The application encountered a number of obstacles, not the least of which was the very poor water quality in the lagoon.
Section 403.918(1), Florida Statutes, provides that various permits, including dredge and fill permits, are not to be issued by the department "unless the applicant provides the department with reasonable assurance that water quality standards will not be violated." The subsection also directs that the department "by rule, shall establish water quality criteria for wetlands within its jurisdiction, which criteria give appropriate recognition to the water quality of such wetlands in their natural state." The wetlands water quality criteria applied by the department under 403.918(1) are the "Class III" water quality standards appearing at 17-302.560, Florida Administrative Code.
Water testing in Deep Lagoon revealed that oil and grease content in the water was twenty times the Class III standard, copper content was thirteen times the standard, lead was twenty times the standard, mercury was one thousand times the standard, and coliform bacteria was too numerous to count. Faced with these results, the applicant proposed to satisfy the water quality issue through resort to the provisions of Section 403.918(2)(b), Florida Statutes, which provides, in part:
If the applicant is unable to meet water quality standards because existing ambient water quality does not meet standards, the department shall consider mitigation measures proposed by or acceptable to the applicant that cause net improvement of the water quality in the receiving body of water for those parameters which do not meet standards.
*773 The applicant proposed steps it would take to improve the quality of the water in the lagoon, though the steps would not raise the water quality to Class III standards.
In July of 1988, the department issued its Intent to Issue, which advised the applicant of its preliminary intent to issue the permit and certification. Thereafter, the appellants petitioned to intervene and requested a formal administrative hearing. At the hearing, testimony and other evidence was presented regarding various issues of concern, including the water quality issue. Following the hearing, the hearing officer issued a recommended order which recommended that the department issue a state dredge and fill permit to the applicant, subject to specified conditions. The hearing officer declined to address the appellants' challenge to the department's apparent plan to issue a certificate of compliance with the Clean Water Act, because she believed she lacked authority to address the question. The recommended order was subsequently adopted by the department in its final order, and the department indicated therein that it would issue the state permit. As to the certification question, the final order said "the issue cannot be adjudicated in this proceeding."
We find the department's decision to issue the state dredge and fill permit to be supported by competent substantial evidence and to be within the discretion delegated to the department, including the discretion delegated under the provisions of Section 403.918(2)(b). However, we disagree with the determination of the hearing officer and the department that the department's certification of compliance with the federal Clean Water Act cannot be challenged in a Section 120.57 proceeding initiated by a substantially affected person.
33 U.S.C. § 1341(a)(1) provides, in part, as follows:
Any applicant for a Federal license or permit[1] to conduct any activity including, but not limited to, the construction or operation of facilities, which may result in any discharge into the navigable waters, shall provide the licensing or permitting agency a certification from the State[2] in which the discharge originates or will originate, or, if appropriate, from the interstate water pollution control agency having jurisdiction over the navigable waters at the point where the discharge originates or will originate, that any such discharge will comply with the applicable provisions of sections 301, 302, 303, 306, and 307 of this act [codified at 33 U.S.C. §§ 1311, 1312, 1313, 1316 and 1317].
Title 33 U.S.C. § 1313 deals with water quality standards which must be met for issuance of federal permits. Section 1313 generally authorizes the states to submit state-adopted water quality standards for adoption by the Federal Environmental Protection Agency as the water quality standards to be used in federal permitting. With certain rather limited exceptions, the section indicates that the state-adopted standards, when submitted, will become the standards used for federal permitting.
Persons whose substantial interests may be affected by agency action are entitled to a Section 120.57, Florida Statutes, hearing to determine the validity of their challenge to the agency action. Here, the appellants asserted that the proposed action of the department, certification of the dredge and fill project as complying with the federal Clean Water Act, was improper. We believe the appellants were entitled to an adjudication of their challenge upon its merits. The fact that the proposed agency action was based in part upon the application of federal statutes, does not detract from the appellants' rights under Section 120.57. Indeed, it appears that the federal courts and agencies have deferred to state review of the appropriateness of a state's certification under the Clean Water Act. Roosevelt Campobello Int'l Park Comm'n v. United States Envtl. Protection Agency, 684 F.2d 1041, 1056 (1st Cir.1982) (collecting *774 cases); see also Arnold Irrigation Dist. v. Department of Envtl. Quality, 79 Or. App. 136, 717 P.2d 1274 (Ct.App.), review denied, 301 Or. 765, 726 P.2d 377 (Or. 1986). Since the appellants were deprived of an adjudication of their challenge to the department's certification, we must reverse that portion of the final order in which the department found that the issue could not be determined in the administrative proceeding, and we must remand for further proceedings on the appellants' challenge to the certification.
We deem it appropriate to make some limited observations which may be of benefit to the parties upon remand. The department argues before this court that, if the record supports issuance of the state permit in reliance upon the "net improvement" language contained in Section 403.918(2)(b), then the authority to issue the certification of compliance with the federal Clean Water Act is a foregone conclusion. The department argues that this is so because the "net improvement" language contained in Section 403.918(2)(b), is a state-adopted "water quality standard," within the meaning of that term under state law and 33 U.S.C. § 1313. However, our review of the record and the statutes and rules referenced by the parties does not convince us that "net improvement" is a "water quality standard" for purposes of either state or federal law.
Section 403.918(1), Florida Statutes expresses the legislative intent as to the manner in which water quality standards are to be established for the wetland areas of Florida. As previously indicated, the subsection provides that the department "by rule, shall establish water quality criteria for wetlands within its jurisdiction... ." (Emphasis added). As its rule adopted in furtherance of this legislative mandate,[3] the department has directed us only to the Class III water quality standards now appearing at 17-302.560, Florida Administrative Code. At no place in that rule can the "net improvement" concept be found. Rather, the rule merely sets forth a long list of maximum objective levels of various substances which may be present within a water sample in order for the sample to meet the minimum requirements for inclusion within the classification.
Nevertheless, the department contends that the legislature itself has expanded the wetlands water quality standards to include "net improvement." The department asserts that this was accomplished through enactment of Section 403.918(2)(b), Florida Statutes. A reading of that subsection reveals, however, that such was clearly not the legislative intent. Subsection (2)(b) provides, in relevant part, as follows:
If the applicant is unable to meet water quality standards because existing ambient water quality does not meet standards, the department shall consider mitigation measures proposed by or acceptable to the applicant that cause net improvement of the water quality in the receiving body of water for those parameters which do not meet standards. Reclamation and restoration programs conducted pursuant to s. 211.32 may be considered as mitigation to the extent that they restore or improve the water quality and the type, nature, and function of biological systems present at the site prior to the commencement of the mining activities.
(Emphasis added). Nothing in the language of the subsection indicates a legislative intent to create a water quality standard which is in addition to the water quality standards to be developed by the department pursuant to the directive of Section 403.918(1). The plain language of subsection (2)(b) expresses a legislative intent not to create water quality standards, but rather to authorize issuance of state permits, under certain circumstances, despite failure to meet water quality standards adopted by the department.
The department contended throughout the proceedings below, and again before *775 this court, that the issuance of a Chapter 403, Florida Statutes, permit, and a certification under the Clean Water Act are "the same." They are not. 33 U.S.C. § 1313 provides that compliance with state-adopted water quality standards is a condition precedent to certification under 33 U.S.C. § 1341. A Chapter 403, Florida Statutes, permit may, however, be issued to an applicant who meets either state water quality standards under Section 403.918(1), Florida Statutes, or who can satisfy the "net improvement" exception under Section 403.918(2)(b), Florida Statutes.
On remand, the department should make a specific determination as to whether the applicant's proposed dredge and fill project complies with state-adopted water quality standards which have been submitted to the Environmental Protection Agency in accordance with 33 U.S.C. § 1313. If the department's certification relies upon the "net improvement" concept, the department should explain how it has reached the conclusion that net improvement is a state-adopted water quality standard. Prior to issuance of its new final order, the department is directed to further remand this case to the hearing officer for the receiving of evidence and the issuance of a new recommended order directed to the certification issue. Among the findings of fact in the recommended order should be a specific finding as to whether all water quality standards upon which the department's proposed certification is based have been properly submitted and accepted by the Environmental Protection Agency. See Florida Dept. of Transportation v. J.W.C. Company, Inc., 396 So.2d 778 (Fla. 1st DCA 1981), as to the applicable burden of proof at the hearing.
Accordingly, that portion of the final order finding the department authorized to issue a Chapter 403, Florida Statutes, dredge and fill permit is affirmed; that portion of the final order finding that the appellants' challenge to the department's proposed Clean Water Act certification could not be adjudicated in a Section 120.57 proceeding is set aside; and this cause is remanded to the department for further proceedings in accordance with this opinion.
SMITH and NIMMONS, JJ., concur.
NOTES
[1] Among the federal permits requiring state certification are federal dredge and fill permits issued under 33 U.S.C. § 1344.
[2] The department issues 33 U.S.C. § 1341 certifications, apparently under authority of Section 403.061(21), Florida Statutes.
[3] The mandatory language of the statute makes it clear that wetlands water quality standards can be established by the department in only one fashion, i.e. through the formal rulemaking process. See, Perkins v. Department of Health and Rehabilitative Services, 452 So.2d 1007 (Fla. 1st DCA 1984).