452 So.2d 1007 (1984)
Betty PERKINS, Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, DISTRICT IV, Appellee.
No. AX-73.
District Court of Appeal of Florida, First District.
June 21, 1984.
*1008 Mark Greenberg and Amy Hirsch, Jacksonville, for appellant.
Alicia Jacobs, Judith Curtain Fendrich and Harden King, Gen. Counsel for the Dept. of Health and Rehabilitative Services, Tallahassee, for appellee.
ERVIN, Chief Judge.
Appellant Perkins appeals, on behalf of herself and others similarly situated, from a final order of a hearing officer of the Department of Health and Rehabilitative Services (HRS), disqualifying her household from food stamp eligibility for failure to meet an assigned "workfare" obligation. We reverse and remand.
Workfare is a component of the joint federal-state Food Stamp Program requiring food stamp recipients to perform labor at government worksites equivalent to the value of their food stamp allotments. State implementation of workfare is not mandatory but, if elected, must be conducted consistent with federal regulations. Chapter 82-211, Laws of Florida, authorized HRS to implement a workfare pilot project in Duval County. The project, initiated in September 1983, imposed workfare requirements on persons receiving benefits through one Food Stamp Program office. No rules or regulations were promulgated but standards and policy statements regarding imposition of workfare obligations and sanctions were established in a handbook disseminated to the project staff.
Perkins is head of a household with a gross monthly income of $350, and receives a monthly food stamp allotment of $299. She is employed as a school bus driver, a job which requires driving daily routes and being on standby to drive additional routes as needed. Perkins failed to comply with her workfare assignment because of a conflict with her standby schedule. In response to HRS's request for explanation of her non-compliance, she stated that she feared endangering her job and that, in the absence of duly promulgated rules, imposition of workfare requirements and sanctions violated Chapter 120, Florida Statutes and Ch. 82-211, Laws of Florida. Perkins's household was subsequently disqualified from food stamp eligibility for a period of two months.
On appeal, Perkins argues that the hearing officer erred in failing to find that HRS was required by Ch. 82-211 and Ch. 120 to promulgate rules for workfare, that imposition of workfare sanctions upon persons expressly exempted by "good cause" provisions of Ch. 82-211 violated the law, and that Perkins was entitled to exemption from workfare for individual good cause due to the jeopardy posed to her present employment.
The interpretation of a statute by the agency charged with the responsibility of its enforcement is entitled to great deference and is only to be set aside if clearly erroneous, unreasonable, or in conflict with the state constitution or the plain intent of the statute. See ABC Liquors v. Department of Business Regulation, 397 So.2d 696, 697 (Fla. 1st DCA 1981). HRS's interpretation of Ch. 82-211 as not necessitating promulgation of rules and regulations ignores the plain statutory language. Section 2 of the statute directs that HRS "shall promulgate rules necessary to implement the workfare pilot project" and § 1(2)(h) authorizes imposition of sanctions for non-compliance "according to the rules established by the Secretary [of HRS]" (e.s.). This language clearly mandates rulemaking, not merely directing it permissively, as contended by HRS and accepted by the hearing officer. The interpretation urged by the agency does not find support in cases interpreting statutes using less restrictive language sanctioning rulemaking. See, e.g., Florida Institutional Legal Services, Inc. v. Florida Parole and Probation Commission, 391 So.2d 247 (Fla. 1st DCA 1981) ("... commission shall have power to make such rules as it deems best.") In saying the above, we have not overlooked the many opinions by this court recognizing that the non-rule policy of an agency will not be invalidated if it is clearly explicated in an adjudicative setting and is *1009 supported by a record foundation. See, e.g., McDonald v. Department of Banking and Finance, 346 So.2d 569 (Fla. 1st DCA 1977); Anheuser-Busch, Inc. v. Department of Business, 393 So.2d 1177 (Fla. 1st DCA 1981); Bowling v. Department of Insurance, 394 So.2d 165 (Fla. 1st DCA 1981); Barker v. Board of Medical Examiners, 428 So.2d 720 (Fla. 1st DCA 1983). None of those cases involved a situation such as this in which the statute creating the workfare project itself mandates rules establishing both the recipient's obligations and sanctions for noncompliance with the obligations.
Since the legislative directive in Ch. 82-211 explicitly requires promulgation of rules implementing workfare, other forms of valid policymaking are precluded. Neither the policy statements and standards set out in the staff handbook, nor development of policy in hearings such as that afforded Perkins below are viable alternatives to mandated rulemaking. The absence of duly promulgated rules requires that HRS's actions, imposing workfare requirements and disqualifications as to Perkins and others of the class similarly situated, be declared invalid. Bigelow v. Department of Environmental Regulation, 375 So.2d 12 (Fla. 4th DCA 1979).
Having found rulemaking required by the statute itself, we need not consider whether Ch. 120 would mandate rulemaking here. Nor is it necessary for us to decide whether Perkins has sufficiently demonstrated good cause for failing to comply with her workfare assignment in order to qualify for a valid exemption. In remanding to the agency for rulemaking, however, it is appropriate to address the issue of availability of a good cause exemption based on household income level.
The Ch. 82-211 definition of "good cause" for exemption from workfare includes as a circumstance a household with earned income greater than the value of its food stamp allotment. Ch. 82-211, § 1(2)(i)3, Laws of Florida. Although Perkins's income exceeded her allotment, no exemption was afforded her or those similarly situated in the subclass on whose behalf she sues. HRS ignored the good cause exemption on the rationale, upheld by the hearing officer, that it does not appear in the federally suggested definition of good cause for exemption and had, in fact, been deleted from an earlier version of federal regulations. This reasoning is not persuasive.
The federal regulations allow HRS to seek federal approval for an exemption based upon a variant definition of "good cause." 7 C.F.R. § 273.22. HRS's speculation that federal approval would not be forthcoming does not justify its failure to comply with a provision of state law without taking the preliminary steps necessary to determine whether such approval can be obtained. Neither is HRS excused from implementing the state definition of good cause by operation of the Resolution of Conflicts clause in Ch. 82-211, § 1(3), providing for resolution of any conflicts between state and federal law in favor of federal law. No conflict with federal law can exist to call into force the resolution provision until HRS tries and fails to obtain approval for use of the state definition.
The hearing officer and HRS erroneously interpreted Ch. 82-211, finding no requirement of rulemaking and no exemption available to Perkins and others with earned income in excess of the value of their food stamp allotments. The proper interpretation compels a different result and the order appealed from is, therefore, reversed and the cause remanded for action consistent with our opinion.
THOMPSON and WIGGINTON, JJ., concur.