513 So.2d 1341 (1987)
FLORIDA POWER CORPORATION, Appellant/Cross-Appellee,
v.
STATE OF FLORIDA, SITING BOARD, State of Florida, Department of Environmental Regulation, Hillsborough County, Polk County, Central Florida Regional Planning Commission, Pasco County, Lake Carlton Arms, Cheval Land Corporation, Cypress Bend Joint Venture, James V. and Mary A. Lau, Nelson P. and Pauline A. Zambito, and Daniel T. and Andrea Z. Maloney, Appellees/Cross-Appellants.
No. BM-134.
District Court of Appeal of Florida, First District.
October 8, 1987.
Rehearing Denied November 13, 1987.
*1342 Carlos Alvarez of Hopping, Boyd, Green & Sams, Tallahassee (H.A. Evertz, III, Senior Counsel, Florida Power Corporation, of counsel), for appellant/cross-appellee.
Jim Smith, Atty. Gen. and Louis F. Hubener, Asst. Atty. Gen., Tallahassee, for appellee State of Florida Siting Bd.
Frederick D. Karl of Karl, McConnaughhay, Roland, Maida & Beal and Emeline C. Acton and Elizabeth L. Eddy, Asst. County Attys., Tampa, for appellee/cross-appellant Hillsborough County.
Mark F. Carpanini, Asst. County Atty., Bartow and A.H. Lane and Ralph Artigliere of Lane, Trohn, Clarke, Bertrand & Williams, Lakeland, for appellee/cross-appellant Polk County and Central Florida Regional Planning Commission.
David Smolker, Chief Asst. County Atty., New Port Richey, for appellee/cross-appellant Pasco County.
Joseph A. McGlothlin of Lawson, McWhirter, Grandoff & Reeves, Tampa, for appellee/cross-appellant Lake Carlton Arms, Cheval Land Corp. and Cypress Bend Joint Venture.
James V. Lau of Lau, Lane, Pieper & Asti, Tampa, for appellee/cross-appellant James V. and Mary A. Lau, Nelson P. and Pauline A. Zambito and Daniel T. and Andrea Z. Maloney.
ERVIN, Judge.
Several issues are raised in this appeal/cross-appeal from the final order of the Governor and Cabinet, which denied certification of appellant-Florida Power Corporation's (FPC) proposed Lake Tarpon-Kathleen transmission line corridor (LT-K transmission line). We reverse as to the issues raised by FPC, and decline to consider all issues raised by the various cross-appellants.
Under the Transmission Line Siting Act (TLSA),[1] a three-step permitting process is provided for the location of transmission line corridors and the construction and maintenance of transmission lines: First, upon request by an electric utility company, or, upon the Florida Public Service Commission's (PSC) motion, a public hearing is conducted by the PSC to determine the need for the transmission line. See Section 403.537, Florida Statutes. Second, if the PSC determines that the line is needed, an application for certification is made to the Department of Environmental Regulation (DER). A public hearing is then conducted pursuant to Section 120.57, Florida Statutes, after which a hearing officer of the Division of Administrative Hearings issues a recommended order, either denying or approving the application. See Section 403.527, Florida Statutes. Lastly, the Governor and members of the Cabinet, sitting as the Siting Board, may approve, approve with modifications, or deny the application. See Section 403.529, Florida Statutes.
Pursuant to the above statutory permitting process, public hearings were first held by the PSC, and, in a final order, the PSC concluded that the transmission line proposed by FPC was needed. FPC then filed with DER an application for certification of the line, proposing two alternate corridors: a 44-mile primary corridor and a 47-mile secondary corridor.
At the hearing regarding certification, evidence was presented as to the location of each corridor, the proposed construction of the transmission lines, and any impact, both adverse and beneficial, the corridors might have on the surrounding environment, development, and population. At the conclusion of this proceeding, the hearing officer recommended that the Siting Board should grant certification for the location of the primary corridor. In its final order, however, the Siting Board rejected the recommendation and denied the proposed transmission line, stating:
The proposed transmission line is denied on the grounds that DER has failed to promulgate general rules as required by Section 403.523(1) and (14), which has prevented the Governor and Cabinet from being able to carry out their responsibilities ... to effect a reasonable *1343 balance between the need for the transmission line and the impact on the environment... . Accordingly, DER is hereby directed to expeditiously initiate the rule promulgation process and thereby comply with the clear legislative mandate set forth in Sections 403.523(1) and (14), F.S.
* * * * * *
The Board also specifically rejects any interpretation of the Transmission Line Siting Act which indicates that the PSC is the sole determiner of degree of need. Any further DOAH hearings ... shall include testimony and specific findings on the relative degree of need which will enable this Board to effect a reasonable balance of the need for the line against the health, safety and environmental impacts associated with the location of the corridor and maintenance of the lines.
In its appeal from the final order of the Siting Board, FPC contends that it was error to deny the application for licensure of the LT-K transmission line based on its failure to comply with yet-to-be-adopted rules. Although subsection 403.523(1) states that DER shall have the duty to adopt or amend rules in order to implement subsection (14), DER had not yet, at the time of the certification hearing, adopted any rules specifying the width of proposed lines necessary for protection against electric and magnetic fields (EMF), as required by section 403.523(14). The hearing officer determined from the evidence presented before her, despite the absence of rules, that the levels of EMF associated with the transmission line did not constitute a danger to the public health, safety, and welfare. The Siting Board denied certification of the proposed line, holding that a determination as to whether FPC had complied with EMF standards necessary to protect the health, safety, and welfare could not be made until DER had adopted rules in accordance with section 403.523(14).
We agree with the appellant that it was error for the Board to defer consideration of the application until rules had been adopted specifying the requirements complying with section 403.523(14). Despite the provisions of section 403.523(1), directing DER to adopt rules implementing the provisions of the TLSA, we do not read the statute as precluding DER from developing incipient non-rule policy in an adjudicatory certification proceeding. As the hearing officer correctly pointed out, "[W]hether the DER chooses to fulfill this responsibility [of setting EMF standards] through rule-making or through case-by-case adjudication is not determinative of whether the proposed corridors are proper for certification." Administrative agencies are not required to institute rulemaking procedures each time a new policy is developed, but may implement rules through incipient rulemaking, e.g., through a case-by-case adjudicatory process. See Florida Cities Water Co. v. Florida Public Service Commission, 384 So.2d 1280 (Fla. 1980); Anheuser-Busch, Inc. v. Department of Business Regulation, 393 So.2d 1177 (Fla. 1st DCA 1981); McDonald v. Department of Banking and Finance, 346 So.2d 569 (Fla. 1st DCA 1977).
The appellees also rely upon Perkins v. Department of Health and Rehabilitative Services, 452 So.2d 1007 (Fla. 1st DCA 1984), in support of their argument that no action could be taken without rule adoption. Perkins in our judgment is distinguishable from the case at bar in that it involved a statute which mandated rules establishing both the recipient's obligations and sanctions  denial of food stamp eligibility  for noncompliance with the obligations. The TLSA contains no similar provision for the imposition of sanctions, and, as such, does not present the same procedural due process concerns that were apparent in Perkins. We therefore do not interpret subsections 403.523(1) and (14) as requiring formal rulemaking. We therefore follow those opinions recognizing that the non-rule policy of an agency will not be invalidated if it is clearly explicated in an adjudicative setting and is supported by a record foundation. See Barker v. Board of Medical Examiners, Department of Professional Regulation, 428 So.2d 720 (Fla. 1st DCA 1983); Anheuser-Busch, Inc. v. Department of Business; McDonald v. Department of Banking and Finance.
*1344 We also reverse that portion of the final order issued by the Siting Board, directing that any further DOAH hearings and recommended orders on the certification of transmission lines "shall include testimony and specific findings on the relative degree of need" of the line (e.s.). The TLSA does not require additional evidentiary findings regarding need once that determination has been made by the PSC. Section 403.537(1)(a) specifically provides that the PSC shall "schedule a public hearing ... to determine the need for a transmission line." Section 403.537(1)(c) moreover states that the determination of need made by the PSC is "binding on all parties to any certification proceeding" and "constitutes final agency action." (e.s.) As final agency action, the decision of need made by the PSC may only be reviewed if appealed within thirty days from the issuance of the order. See Section 120.57 Florida Statutes, and Fla.R.App.P. 9.110. Once the thirty-day time period has expired, as it has here, such determination is res judicata and binding on all further proceedings.
The finality of the PSC's determination does not in any way preclude the Siting Board from effecting a reasonable balance between the need for the proposed transmission line and the resulting impact the line may have on the public, as required by Section 403.529(3)(e).[2] The TLSA, however, does not permit a redetermination of the factual finding of need made by the PSC, but rather allows the Siting Board to determine, after consideration of the statutory criteria delineated under section 403.529(3), whether the proposed transmission line should be approved, approved with modifications, or denied. Accordingly, we reverse the Siting Board's order insofar as it requires the promulgation of rules, and holds that the question of PSC's determination of need, pursuant to the authority conferred on it by section 403.537, may be revisited. The cause is remanded to the Board with directions that it review the recommended order, together with the supporting record, pursuant to its statutory responsibilities under section 403.529, and then issue a final order.
Various issues were raised by appellees/cross-appellants, all of which we decline to address on the merits, because, notwithstanding that they were decided adversely to cross-appellants' contentions by the hearing officer, the final order on review does not address them. Accordingly, the cross-appeals are dismissed without prejudice to cross-appellants' rights to raise them before the Siting Board after remand of this order. See Charter Medical-Jacksonville, Inc. v. Community Psychiatric Centers of Florida, Inc., 482 So.2d 437 (Fla. 1st DCA 1985).
REVERSED in part, DISMISSED in part, and the cause is REMANDED for further consistent proceedings.
WIGGINTON, J., and FRANK, RICHARD H., Associate Judge, concur.
NOTES
[1] Sections 403.52-403.536, Florida Statutes.
[2] Section 403.529(3) provides that the Siting Board, in determining whether to approve the application for licensure, shall consider whether the transmission line will:

(e) Effect a reasonable balance between the need for the transmission line as a means of providing abundant low-cost electrical energy and the impact upon the public and the environment resulting from the location of the transmission line corridor and maintenance of the transmission lines.