563 So.2d 97 (1990)
Albert Charles HARRIS, Appellant,
v.
STATE of Florida, DEPARTMENT OF REVENUE, Appellees.
No. 88-3026.
District Court of Appeal of Florida, First District.
April 16, 1990.
As Clarified June 18, 1990.
*98 Douglas D. Stratton of Law Offices of Douglas D. Stratton, Miami Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Jeffrey M. Dikman and Eric J. Taylor, Asst. Attys. Gen., Tallahassee, for appellees.
BARFIELD, Judge.
Albert Charles Harris appeals from a final order affirming a tax warrant and jeopardy assessment issued by the Department of Revenue, pursuant to section 212.0505, Florida Statutes (1987), challenging the constitutionality of the statute on Fourth, Fifth and Fourteenth Amendment grounds. We affirm.
In October, 1987, a federal grand jury for the Southern District of Florida indicted Harris as a member of a criminal conspiracy formed to import unlawful drugs into Florida. Based on count twenty-three of the indictment, which specifically charged Harris and others with importing 460 kilograms of cocaine into Florida on July 24, 1986, the Florida Department of Revenue filed a notice of jeopardy assessment against Harris, pursuant to section 212.0505. The Department issued a warrant for the collection of the jeopardy tax and recorded the warrant in the public record. Harris timely challenged the assessment and warrant in a formal administrative hearing. Finding that Harris had participated in the transportation of the cocaine in July, 1986, the hearing officer recommended that the Department affirm the tax warrant and jeopardy assessment. The Department followed the hearing officer's recommendation and issued a final order.
Harris contends that section 212.0505 violates the constitutional privilege against self-incrimination, citing Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968), and Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969). However, unlike the federal statutes involved in Marchetti and Leary, section 212.0505 imposes explicit restrictions on disclosure and use of information obtained as a consequence of payment of the tax. In particular, section 213.053, Florida Statutes (1987), which is applicable to chapter 212, provides that:
(2) ... all information contained in returns, reports, accounts, or declarations received by the department, including investigative reports and information and including letters of technical advice, is confidential except for official purposes... [a]ny officer or employee, or former officer or employee, of the department who divulges any such information in any manner, except for such official purposes ... is guilty of a misdemeanor of the first degree... .
Additionally, Florida Administrative Code Rule 12-22.003(5) provides that:

*99 Any current or former Department employee or officer who makes or participates in an unauthorized disclosure of confidential tax information is subject to criminal penalties provided in s. 213.053, F.S., and other penalties provided by law. Such person shall also be subject to disciplinary action up to and including dismissal. Unauthorized disclosures which involve federal tax information are additionally subject to the criminal felony provisions of 26 U.S.C. s. 7213(a)(2).
Since Florida's tax confidentiality provisions provide sufficient protections at least coextensive with the privilege against selfincrimination itself, Harris may not properly assert the privilege in this case. Marchetti, 390 U.S. at 58, 88 S.Ct. at 708, 19 L.Ed.2d at 903.[1]
We also reject Harris' contention that section 212.0505(5), which deems the drug tax assessment prima facie correct in any judicial or administrative proceeding, denies him procedural due process. In analogous controversies as the property tax assessments, it is held that tax assessors are constitutional officers whose actions are clothed with a presumption of correctness. Straughn v. Tuck, 354 So.2d 368, 371 (Fla. 1978). In order to overcome that presumption, the taxpayer must present proof that the tax assessor departed from the requirements of the law or that the assessment was not supported by any reasonable hypothesis of legality. Id.; Powell v. Kelly, 223 So.2d 305, 308 (Fla. 1969); Blake v. Xerox Corp., 447 So.2d 1348, 1350 (Fla. 1984); Folsom v. Bank of Greenwood, 97 Fla. 426, 120 So. 317, 318 (1929). In making the jeopardy assessment against Harris, the Department followed the proper procedures outlined by statute and administrative rule, including affording Harris notice and a hearing in which to contest the assessment. Harris fails to demonstrate how the Department's jeopardy assessment irreparably harmed his right to seek review through the administrative or legal process. See Commissioner of Internal Revenue v. Shapiro, 424 U.S. 614, 631-632, 96 S.Ct. 1062, 1072-1073, 47 L.Ed.2d 278, 292-293 (1976).
Harris contends next that section 212.0505 is unconstitutional because it imposes an improper penalty or fine and not a tax. In United States v. Sanchez, 340 U.S. 42, 71 S.Ct. 108, 95 L.Ed. 47 (1950), the United States Supreme Court upheld the federal Marijuana Tax Act (now repealed) against a similar challenge. The statute taxed the unregistered transfer of marijuana higher than a registered transfer. The Court stated that the statute had several proper purposes, including raising revenue and controlling the traffic of marijuana, and that, despite the regulatory effect and close resemblance to a penalty, the statute "d[id] not cease to be valid merely because it regulate[d], discourage[d], or even definitely deter[red] the activities taxed." 340 U.S. at 44, 71 S.Ct. at 110, 95 L.Ed. at 49. The Court held that the statute was "a legitimate exercise of the taxing power despite its collateral regulatory purpose and effect." 340 U.S. at 45, 71 S.Ct. at 110, 95 L.Ed. at 50. The Court further held that the more severe tax for unregistered transfers was reasonably related to securing payment of the tax and stopping transfers to unregistered transferees, and provided "an additional source from which the expense of unearthing clandestine transfers can be recovered." 340 U.S. at 45-46, 71 S.Ct. at 110-111, 95 L.Ed. at 50. We find Sanchez controlling.
Harris also contends that section 212.0505 violates his right to equal protection under the law. However, he fails to develop *100 any argument showing a systematic, intentional or purposeful discrimination necessary to set aside a tax assessment on equal protection grounds. See Raymond v. Chicago Union Traction Co., 207 U.S. 20, 28 S.Ct. 7, 52 L.Ed. 78 (1907); Arundel Corp. v. Sproul, 136 Fla. 167, 186 So. 679 (Fla. 1939); Folsum v. Bank of Greenwood, 97 Fla. 426, 120 So. 317 (1929). Consequently, we reject his equal protection challenge to the statute.
Finally, Harris argues that section 212.0505 allows liability for the tax notwithstanding the fact that the subject drugs may be illegally seized. We agree with the Department that Harris lacks standing to assert a Fourth Amendment challenge to section 212.0505, as no drugs were seized in the instant case. We also reject Harris' analogy to the applicability of the Fourth Amendment's exclusionary rule to forfeiture proceedings. The second sentence of section 212.0505(5) provides that the suppression of evidence in a criminal case does not affect an assessment under section 212.0505. This provision is consistent with the well-established principle that the seizure of evidence in violation of the Fourth Amendment does not preclude admission of that evidence in a civil proceeding. See United States v. Janis, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976); Tirado v. Commissioner of Internal Revenue, 689 F.2d 307, (2d Cir.1982), cert. den., 460 U.S. 1014, 103 S.Ct. 1256, 75 L.Ed.2d 484 (1983); Jonas v. City of Atlanta, 647 F.2d 580 (5th Cir.1981). In contrast, forfeiture provides an additional penalty for violating a criminal law to which Fourth Amendment principles absolutely apply. Jonas, 647 F.2d at 587-588.
In conclusion, we uphold section 212.0505 against Harris' constitutional challenges, and we AFFIRM the tax warrant and jeopardy assessment.
BOOTH and WIGGINTON, JJ., concur.
NOTES
[1] Other state courts have construed similar drug tax statutes in the same manner. See State v. Durrant, 244 Kan. 522, 769 P.2d 1174 cert. den., Dressel v. Kansas, ___ U.S. ___, 109 S.Ct. 3254, 106 L.Ed.2d 600 (1989); Sisson v. Triplett, 428 N.W.2d 565 (Minn. 1988); State v. Davis, 787 P.2d 517 (Utah App. 1990). Compare, State v. Roberts, 384 N.W.2d 688 (S.D. 1986), in which the Supreme Court of South Dakota struck down South Dakota's drug tax act on Fifth Amendment grounds because the act expressly allowed for the release of tax return information to law enforcement authorities, thus, creating a real and appreciable risk of self-incrimination. Compare also, People v. Duleff, 183 Colo. 213, 515 P.2d 1239 (1973) (statutory licensing requirement for cultivation of marijuana violated Fifth Amendment, where taxpayer would have to disclose information useful to criminal investigation).