617 So.2d 390 (1993)
Mark Alford HERRE, Appellant,
v.
The STATE of Florida DEPARTMENT OF REVENUE, Appellee.
No. 91-1913.
District Court of Appeal of Florida, Third District.
April 20, 1993.
Quinon, Strafer & Scola, P.A., and G. Richard Strafer, Stephen J. Bronis, Miami, for appellant.
Robert A. Butterworth, Atty. Gen. and Lee R. Rohe, Asst. Atty. Gen., Tallahassee, for appellee.
Before JORGENSON, COPE and GODERICH, JJ.
PER CURIAM.
Mark Alford Herre appeals a final order entered by the Florida Department of Revenue ("Department"). We reverse.
On October 14, 1988, Herre was stopped by Monroe County sheriff's deputies after they received an anonymous tip that someone was transporting illegal drugs in a car fitting the description of the car Herre was driving. The deputies searched Herre's vehicle and found 300 pounds of marijuana in the trunk. Herre was arrested and charged with trafficking in marijuana.
On November 17, 1988, the Department sent Herre a notice of tax assessment and jeopardy findings. The notice stated that the Department had information Herre "engaged in the unlawful sale, use, consumption, distribution, manufacture, derivation, production, transportation, or storage of ... cannabis... ." Pursuant to section 212.0505, Florida Statutes (Supp. 1988)[1] the Department assessed Herre a *391 tax at the rate of 50 percent of the estimated retail price of the marijuana,[2] resulting in a tax of $105,000. See § 212.0505(1)(a), Fla. Stat. (Supp. 1988). The Department assessed the statutory surcharge of 25 percent, resulting in a surcharge of $52,500. Id. § 212.0505(1)(b).
The Department assessed a 50 percent penalty under subsection 212.12(2), Florida Statutes (Supp. 1988), for failure to have filed a return and paid the tax. Under subsection 212.12(2), "[w]hen any person ... required ... to make any return or to pay any tax ... imposed by this chapter fails to timely file such return or fails to pay the tax ... due within the time required hereunder, ... a specific penalty shall be added...." Id. § 212.12(2)(a). Insofar as applicable here, "[i]n the case of a ... willful intent to evade payment of any tax ... the person ... attempting to evade the payment ... shall be liable for a specific penalty of 50 percent of the tax bill...." Id.[3] Accordingly, the Department assessed a 50 percent penalty amounting to $78,750.
The notice stated that the total due was $236,250. The notice also informed Herre the Department determined the taxes imposed were in jeopardy because of his "unlawful activity and lack of payment of taxes... ." See Fla. Admin. Code R. 12-21.005(1);[4]see also § 212.0505(3), Fla. Stat. (Supp. 1988). The notice stated that the $236,250 assessment was immediately payable in full. The notice also announced that a copy of the assessment had been forwarded to the State Attorney, as provided under section 212.0505(6)(a).[5]
On December 28, 1988 Herre pled no contest to a reduced charge of attempted trafficking in marijuana, was sentenced to five years probation and was fined $5,000.
Herre petitioned for reconsideration of the final jeopardy assessment and requested an administrative hearing pursuant to sections 72.011 and 120.575, Florida Statutes (1987). Herre argued, among other things, that section 212.0505 was unconstitutional as violative of the Fifth and Fourteenth Amendments to the United States Constitution.
The administrative hearing officer entered a recommended order containing findings of fact and conclusions of law, and sustained the amount of the assessment. The hearing officer expressly declined to reach the claim of unconstitutionality, noting that neither a hearing officer nor an agency head is authorized to determine the constitutionality of a statute.
*392 The Department issued a Final Order adopting the hearing officer's recommended order, with exceptions immaterial here. The Final Order rejected all of Herre's claims and sustained the amount of the assessment in full. The Department ruled that it was not empowered to determine the constitutionality of statutes and declined to express any opinion on those arguments.
Herre appeals the Department's final order. We find section 212.0505 unconstitutional as violative of Herre's right against compelled self-incrimination under the Fifth and Fourteenth Amendments. The tax at issue here is indistinguishable from those analyzed in Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968); and Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969). Based on the controlling United States Supreme Court decisions just cited, reversal of the final order is required.
We begin with the leading decision, Marchetti. Marchetti sets forth the self-incrimination principles which apply where a tax is "not imposed in `"an essentially non-criminal and regulatory area * * *,"' 390 U.S. at 57, 88 S.Ct. at 707, but was `directed to a "selective group inherently suspect of criminal activities."'" Leary v. United States, 395 U.S. at 13, 89 S.Ct. at 1536 (summarizing Marchetti; footnotes omitted). In Marchetti and Grosso, the tax at issue was the federal occupational tax on wagers, an activity illegal under the laws of almost every state. 395 U.S. at 13, 89 S.Ct. at 1536.
In the present case section 212.0505, Florida Statutes (Supp. 1988), imposes a sales and use tax on the sale or use of illegal drugs. Sections 212.0505 is therefore "directed at a `selective group inherently suspect of criminal activities[,]'" Marchetti, 390 U.S. at 57, 88 S.Ct. at 707, and the Marchetti principles are directly applicable.
Marchetti essentially states:
(1) Where a tax (a) is "directed at a `selective group inherently suspect of criminal activities'"[[6]] and
(b) "compliance with the statute would have subjected petitioner to a `"real and appreciable"' risk of self-incrimination",[[7]] then
(c) the statute infringes the right of self-incrimination and need not be complied with.
(2) A statute can permissibly be enacted for the purpose of taxing activities which are unlawful, but the privilege against self-incrimination will be overcome only "if other protection is granted which `is so broad as to have the same extent in scope and effect' as the privilege itself."[[8]]
The statute in Marchetti imposed a tax upon people who accepted gambling wagers and required persons who accepted the wagers to register annually with the director of their local internal revenue district. 390 U.S. at 42, 88 S.Ct. at 699. The statute also required the internal revenue office to "maintain for public inspection a listing of all who have paid the occupational tax, and to provide certified copies of the listing upon request to any state or local prosecuting officer." Id. at 43, 88 S.Ct. at 700. The Court determined the statute was unconstitutional in that "it can scarcely be denied that the obligations to register and to pay the occupational tax created for [Marchetti] `real and appreciable,' and not merely `imaginary and unsubstantial,' hazards of self-incrimination." Id. at 48, 88 S.Ct. at 702 (citations omitted). The court concluded that Marchetti was required to provide "information which he might reasonably suppose would be available to prosecuting authorities, and which would surely prove a significant `link in a chain' of evidence tending to establish his guilt." Id.
*393 Grosso was the companion case to Marchetti. Grosso was prosecuted for failure to pay the gambling tax and for willfully evading payment of the tax. Unlike Marchetti, Grosso was not prosecuted for failure to register under the federal wagering statute.[9] In Grosso the tax payment provisions of the federal wagering statute were found to infringe the privilege against self-incrimination.
In Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), the Supreme Court held that a federal tax on the transfer of marijuana violated the petitioner's Fifth Amendment right against self-incrimination. "[A]t the time of paying the tax the taxpayer must `register his name or style and his place or places of business' at the nearest district office of the Internal Revenue Service," 395 U.S. at 14, 89 S.Ct. at 1536, thus exposing him to the "real and appreciable" risk of self-incrimination. Id. at 16, 89 S.Ct. at 1537. Like the wagering tax information, the marijuana tax information was available to law enforcement officials. Id. at 15, 89 S.Ct. at 1537.
In light of the foregoing principles we examine the requirements of section 212.0505.
Section 212.0505 is part of Florida's general sales and use tax law, which is set forth in chapter 212, Part I, of the Florida Statutes (1987 & Supp. 1988). The same collection and enforcement procedures apply to the section 212.0505 drug tax as apply to the sales tax generally (with an exception not applicable here). § 212.0505(3), Fla. Stat. (Supp. 1988).[10]
According to the Department, Herre should have filed a Sales and Use Tax Return, which is the Department's Form DR-15 CS. The return should have been filed in accordance with the Department's Rule 12A-1.056(1), Florida Administrative Code.[11]
The Sales and Use Tax Return contains identifying data and is required to be signed and dated. The return must be accompanied by the tax payment[12] and filed with the appropriate Department of Revenue office by the deadline specified in Rule 12A-1.056.[13]
The next inquiry under Marchetti and Grosso is whether compliance with section 212.0505 would have subjected Herre to "`real and appreciable,' and not merely `imaginary and insubstantial,' hazards of self-incrimination." Marchetti, 390 U.S. at 48, 88 S.Ct. at 702 (citations omitted); Grosso, 390 U.S. at 67, 88 S.Ct. at 713.
Under the Florida statutory scheme, all information filed with the Department in compliance with section 212.0505 is readily available to state and federal law enforcement authorities. Paragraph 212.0505(6)(a) states that the Department of Revenue will provide a copy of all assessments to the state attorney of the appropriate circuit. Paragraph 212.0505(6)(b) states that all information is subject to the provisions of section 213.053, Florida Statutes (Supp. 1988). Subsection 213.053(8) states:
The Department of Revenue shall provide returns, reports, accounts, or declarations received by the department, including investigative reports and information, or information contained in such documents, pursuant to an order of a judge of a court of competent jurisdiction *394 or pursuant to a subpoena duces tecum only when the subpoena is:
(a) Issued by a state attorney, a United States attorney, or a court in a criminal investigation or a criminal judicial proceeding;
(b) Issued by a state or federal grand jury; or
(c) Issued by a state attorney, the Department of Legal Affairs, a United States attorney, or a court in the course of civil investigation or a civil judicial proceeding under the state or federal racketeer influenced and corrupt organization act or under chapter 869.
Therefore, information filed by a person in compliance with section 212.0505 will be made available to state and federal law enforcement officials upon the presentation of a subpoena or a court order. See also §§ 213.053(5), (6), Fla. Stat. (Supp. 1988) (administrative disclosure to certain agencies).[14]
Marchetti and Grosso hold that a statutory scheme which allows disclosures of the type described here creates a real and appreciable risk of self-incrimination. Writing in the context of the federal wagering tax, the Supreme Court pointed out that evidence of registration or payment "has often been admitted at trial in state and federal prosecutions for gambling offenses; such evidence has doubtless proved useful even more frequently to lead prosecuting authorities to other evidence upon which convictions have subsequently been obtained." Marchetti, 390 U.S. at 47-48, 88 S.Ct. at 702 (footnotes omitted); accord Grosso, 390 U.S. at 67, 88 S.Ct. at 713; Leary, 395 U.S. at 12-29, 89 S.Ct. at 1535-1544.
The same risks of self-incrimination exist under the Florida statute. As in Marchetti, evidence of the payment of the section 212.0505 drug tax, or the filing of a return thereunder, would be admissible in evidence and would be a valuable source of information "which would surely prove a significant `link in a chain' of evidence tending to establish his guilt." 390 U.S. at 48-49, 88 S.Ct. at 702-703 (footnotes omitted).[15]
We decline to follow the decision of the First District in Harris v. State Department of Revenue, 563 So.2d 97 (Fla. 1st DCA), review denied, 574 So.2d 141 (Fla. 1990). In Harris the court held that section 212.0505 "imposes explicit restrictions on disclosure and use of information obtained as a consequence of payment of the tax." Id. at 98. The court held that the confidentiality provisions were "at least coextensive with the privilege against self-incrimination." Id. at 99. We cannot agree.
As stated previously, subsection 213.053(8) provides that all tax information, including tax returns, may be released to state and federal law enforcement officials upon the issuance of a subpoena duces tecum. Therefore, while Department officials may not release information upon their own accord, they can legally release information which may incriminate Herre if presented with a subpoena or court order. This exception, specifically designed to facilitate criminal investigations, eliminates any protections the provisions of section 212.053 may have otherwise offered Herre. Harris apparently overlooked the disclosure provisions of subsection 213.053(8). The statute also allows administrative information-sharing and requires communication *395 with state prosecutorial agencies regarding assessments made under section 212.0505. See id. § 213.053(5), (6); § 212.0505(6). Thus we do not find that the statute's confidentiality provisions are at least coextensive with the privilege against self-incrimination and we certify direct conflict with the Harris decision.
Several other states which have similar statutes have examined them in light of the Supreme Court's holding in Marchetti. In State v. Roberts, 384 N.W.2d 688 (S.D. 1986), the court held that a statute similar to Florida's was unconstitutional. Tax information acquired under South Dakota's statute could be released to law enforcement officials upon a written request to the secretary of revenue. The court held "[w]e believe filing a return creates the `real and appreciable' risk of self-incrimination... ." Id. at 691; see also State v. Smith, 120 Idaho 77, 813 P.2d 888 (1991) (tax on illegal drugs was unconstitutional because it failed to provide the functional equivalent of a guarantee against self-incrimination).
Similar statutes in Kansas and Alabama have been held to be constitutional because they provide additional safeguards which protect a taxpayer from the risk of self-incrimination. The statute in Kansas provides that a person paying the illegal drug tax does not have to identify himself and that tax information may not be used against a person in any criminal proceeding. See K.S.A. 1988 Supp. §§ 79-5201 to -5210. The Kansas Supreme Court analyzed the statute against a Fifth Amendment attack and held that the statute did provide adequate safeguards. See State v. Durrant, 244 Kan. 522, 769 P.2d 1174, cert. denied, 492 U.S. 923, 109 S.Ct. 3254, 106 L.Ed.2d 600 (1989); see also Briney v. State Department of Revenue, 594 So.2d 120 (Ala. Ct. App. 1991) (Alabama statute found constitutional against a Fifth Amendment attack because it contained provision prohibiting use of tax information against a dealer in a criminal proceeding.)
It has been suggested that Herre has no standing to challenge the constitutionality of the statute because he made no effort to file a return or pay the tax. That precise argument was considered at length and squarely rejected in Part III of the Marchetti decision, 390 U.S. at 50-54, 88 S.Ct. at 704-705.
We conclude that section 212.0505 does not meet the constitutional standards set forth in Marchetti, Grosso, and Leary, and hold that section 212.0505 is facially unconstitutional.[16] We certify direct conflict with Harris v. State Department of Revenue.
The order under review is reversed and the cause remanded with directions to enter a final order in favor of Herre.
Reversed and remanded with directions; conflict certified.[17]
COPE and GODERICH, JJ., concur.
JORGENSON, Judge, concurring in part, dissenting in part.
I agree with the result as applied to Herre. I respectfully dissent from that portion of the opinion which reaches the constitutionality of section 212.0505, Florida Statutes (Supp. 1988), because this case *396 can be disposed of on other grounds. Singletary v. State, 322 So.2d 551 (Fla. 1975); McKibben v. Mallory, 293 So.2d 48 (Fla. 1974).
Section 212.18(2), Florida Statutes (Supp. 1988), provides that the Department of Revenue "shall provide by rule and regulation a method for" "administer[ing] and enforc[ing] the assessment and collection of the taxes, interests, and penalties imposed by this chapter," including section 212.0505. See also § 212.0505(3), Fla. Stat. (Supp. 1988) (giving the Department of Revenue the authority to adopt rules for administering section 212.0505).[1] Furthermore, section 212.18(2) requires the Department of Revenue to prepare instructions to guide the taxpayers on how to comply with the requirements of chapter 212. Section 212.18(2), Fla. Stat. (Supp. 1988). To this day, the Department of Revenue has yet to adopt rules, procedures, and instructions on how to comply with section 212.0505.
Where a statute requires an agency to adopt rules for implementing the purpose of the statute, the courts should not allow the agency to proceed with ad hoc determinations. Perkins v. Department of Health and Rehabilitation Servs., 452 So.2d 1007 (Fla. 1st DCA 1984); Bigelow v. Department of Envtl. Regulation, 375 So.2d 12 (Fla. 4th DCA 1979), cert. denied, 385 So.2d 756 (Fla. 1980); Lavers v. Department of Legal Affairs, 326 So.2d 80 (Fla. 1st DCA), cert. denied, 336 So.2d 1184 (Fla. 1976). In Perkins, the statute required HRS to adopt rules to implement a project disqualifying food-stamp recipients from receiving the stamps unless they met a workfare obligation. The court declared Perkins' disqualification invalid because HRS had failed to promulgate rules as required by the statute. Perkins, 452 So.2d at 1009. Similarly, the court in Bigelow declared invalid the Department of Administration's reduction in salaries for failure to promulgate rules and procedures for the reduction of salaries as required by the statute. Bigelow, 375 So.2d at 13. In Lavers the court also overturned an agency's order to cease and desist from towing automobiles because the agency had failed to adopt the required rules. Lavers, 326 So.2d at 82.
This case is controlled by the holdings in Perkins, Bigelow, and Lavers. The Department of Revenue was required to implement rules, procedures, and instructions on how to comply with section 212.0505. See §§ 212.18(2), 212.0505(3), Fla. Stat. (Supp. 1988). In the absence of such rules, procedures, and instructions, the actions by the Department are invalid, and thus the order on appeal should be reversed. Perkins, 452 So.2d at 1009; Bigelow, 375 So.2d at 13; Lavers, 326 So.2d at 82.
I see no reason to depart from the well-established principle of refraining from deciding the constitutionality of a statute if the case may be disposed of on other grounds. The majority's concerns could be solved by adopting rules and instructions protecting the confidentiality of the taxpayer. See State v. Davis, 787 P.2d 517, 523 (Utah Ct.App. 1990) (recognizing that if the identity of the taxpayer remains anonymous "there is substantially less danger" of self-incrimination); State v. Durrant, 244 Kan. 522, 530, 769 P.2d 1174, 1180 (analyzing the constitutionality of a similar statute but first assuming that the statute required the disclosure of incriminating information, i.e., the identity of the taxpayer), cert. denied, 492 U.S. 923, 109 S.Ct. 3254, 106 L.Ed.2d 600 (1989). Thus, I would not reach the constitutionality of section 212.0505 until the Department of Revenue adopts the appropriate rules, regulations, and instructions on compliance with section 212.0505.
NOTES
[1] Section 212.0505 provides in part:

Taxation of unlawful sales, use, and other transactions involving medicinal drugs, cannabis, or controlled substances. 
(1)(a) Every person is exercising a taxable privilege who engages in this state in the unlawful sale, use, consumption, distribution, manufacture, derivation, production, transportation, or storage of any medicinal drug, as defined in chapter 465, cannabis, as defined in s. 893.02, or controlled substance enumerated in s. 893.03. For the exercise of such privilege, a tax is levied on each taxable transaction or incident, including each occasional or isolated unlawful sale, use, consumption, distribution, manufacture, derivation, production, transportation, or storage, at the rate of 50 percent of the estimated retail price of the medicinal drug, cannabis, or controlled substance involved in the transaction or incident.
(b) In addition to any other tax there shall also be a 25 percent surcharge on the estimated price of the transaction or incident taxable under paragraph (a).
[2] The Department computed the estimated retail price of 300 pounds of marijuana to be $210,000.
[3] In addition, willful evasion under paragraph 212.12(2)(a) is a first degree misdemeanor. The misdemeanor penalty is not at issue in this case.
[4] Florida Administrative Code Rule 12.21.005(1) states in part:

Seizure of Property Under Jeopardy
(1) ... Jeopardy may be considered to exist where a taxpayer is about to depart from the state, to conceal its property, or to do any other act tending to prejudice or render wholly or partly ineffectual the normal procedures for collection or any amount of tax, penalty, or interest which the Department determines is due, or if the Department otherwise finds that the collection of such amount will be jeopardized by delay. Jeopardy may be considered to exist in the case of billings where the taxpayer has ceased to make regular tax payments and the estimated deficiency is deemed or appears to be substantial.
[5] Section 212.0505(6)(a) states in part: "The department shall notify the state attorney of the appropriate circuit of an assessment made under this section."
[6] Id.
[7] Leary, 395 U.S. at 13, 89 S.Ct. at 1536 (footnote omitted); Marchetti, 390 U.S. at 48, 88 S.Ct. at 702.
[8] Marchetti, 390 U.S. at 58, 88 S.Ct. at 708 (citation omitted).
[9] The Department has not contended that Herre was required to register as a dealer, so we need not consider whether the statute imposed a dealer registration requirement on Herre. See §§ 212.0505, 212.06(2), Fla. Stat. (Supp. 1988).
[10] The exception involves elimination of the dealer credit, id. § 212.0505(3), a matter which is not at issue here.
[11] According to the Department's Brief:

Rule 12A-1.056(1)(a), Fla. Admin. Code, sets forth the requirements for payment of taxes imposed by Part I, Ch. 212. Section 212.0505, Fla. Stat., is located under Part I, Ch. 212 and therefore the rule applies to drug tax just as it does to other taxes. The tax form to be used is DR-15 CS [Sales and Use Tax Returns]... .
appellee's Brief at 12.
[12] Line 14 of the return specifies "amount due with return."
[13] Although section 212.0505(3) authorizes the Department to adopt rules specifically for the section 212.0505 drug tax, the Department has not done so. In the absence of specific rules for the section 212.0505 tax, the general rules applicable to Part I of chapter 212 are applicable.
[14] Subsection 212.053(2), Florida Statutes (Supp. 1988) and Florida Administrative Rule 12-22.003 state a general rule that all tax information is to be confidential, but the general rule is expressly made subject to the cited exceptions.
[15] The Department argues that there is no real and appreciable risk of self-incrimination because Herre could move to quash a subpoena duces tecum if one was presented to the Department. The short answer is that the statute contains no mechanism for giving pre-disclosure notice to the taxpayer of the Department's receipt of a state or federal subpoena or court order (§ 213.053(8)), not to mention voluntary agency information-sharing (§ 213.053(5), (6)), or other communications with prosecutorial agencies (§ 212.0505(6)(a)). More fundamentally, such a procedure would fall short of the safeguard required by Marchetti, for the motion to quash would itself confirm the identity of the taxpayer and existence of a section 212.0505 "illegal drug" filing  which information is independently useful to a law enforcement agency.
[16] We note that the Department has a right of direct appeal to the Florida Supreme Court. Art. V, § 3(b)(1), Fla. Const.
[17] As to the position advanced by the dissent, subsection 212.0505(3), Florida Statutes, provides:

The taxes imposed under this section are subject to the same interest and penalties and the same procedures for collection and enforcement as other taxes imposed under this part, except that a dealer's credit under s. 212.12(1) is not allowed. The department may adopt rules for administering the taxes imposed by this section.
(Emphasis added). The statute expressly makes the section 212.0505 drug tax subject to the Department's general procedures for sales tax collection, and says that the Department "may"  not shall  "adopt rules for administering the taxes imposed by this section [212.0505]." Id. (emphasis added); see also supra note 13. The statute authorizes, but does not require, promulgation of special rules for section 212.0505. The Department was not under a mandate to adopt separate rules for section 212.0505, although it had the power to do so if it so chose. The method suggested by the dissent does not afford a means of avoiding the constitutional issue.
[1] In my view, section 212.0505(3) and section 212.18(2) must be read in pari materia.