634 So.2d 618 (1994)
FLORIDA DEPARTMENT OF REVENUE, Petitioner,
v.
Mark Alford HERRE, Respondent.
No. 81803.
Supreme Court of Florida.
March 31, 1994.
Robert A. Butterworth, Atty. Gen. and Lee R. Rohe, Asst. Atty. Gen., Tax Section, Tallahassee, for appellant.
Stephen J. Bronis of Davis, Scott, Weber & Edwards, and G. Richard Strafer of Quinon & Strafer, P.A., Miami, for appellee.
McDONALD, Justice.
We review Herre v. Florida Department of Revenue, 617 So.2d 390 (Fla. 3d DCA 1993), in which the district court declared unconstitutional the statute providing for a sales tax on transactions involving marijuana and controlled substances, section 212.0505, Florida Statutes (Supp. 1988). The district court certified conflict with Harris v. Florida Department of Revenue, 563 So.2d 97 (Fla. 1st DCA), review denied, 574 So.2d 141 (Fla. 1990). We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution. We approve the district court's decision in the instant case and disapprove Harris.
Monroe County sheriff's deputies stopped Herre on October 14, 1988, after receiving an anonymous tip that someone was transporting illegal drugs in a car fitting the description of the one he was driving. During a search of Herre's vehicle, the deputies found 300 pounds of marijuana in the trunk and arrested Herre and charged him with trafficking in marijuana. On November 17, 1988, the Florida Department of Revenue sent Herre a notice of tax assessment and jeopardy findings. The notice stated that Herre had "engaged in the unlawful sale, use, consumption, distribution, manufacture, derivation, production, transportation, or storage" of marijuana. Therefore, pursuant to subsection 212.0505(1)(a), the Department assessed a tax at the rate of fifty percent of the estimated retail price of the marijuana.[1] *619 The Department also assessed a statutory surcharge of twenty-five percent[2] and a fifty percent penalty for failure to file a return and pay the tax.[3] The total amount assessed was $236,250 and was immediately payable in full.
The notice sent to Herre informed him that the Department of Revenue had forwarded a copy of the tax assessment to the State Attorney, as provided under subsection 212.0505(6)(a). On December 28, 1988, Herre pled no contest to a reduced charge of attempted trafficking in marijuana and received a sentence of five years probation and a $5,000 fine. Herre then petitioned for reconsideration of the final jeopardy assessment and requested an administrative hearing. The hearing officer entered a recommended order sustaining the amount of the assessment and the Department issued a final order adopting the hearing officer's recommended order. The district court found that section 212.0505 violated the Fifth Amendment privilege against self-incrimination and reversed the final order.
Section 212.0505 provides in pertinent part:
(1)(a) Every person is exercising a taxable privilege who engages in this state in the unlawful sale, use, consumption, distribution, manufacture, derivation, production, transportation, or storage of any medicinal drug... . For the exercise of such privilege, a tax is levied on each taxable transaction or incident ... at the rate of 50 percent of the estimated retail price of the medicinal drug, cannabis, or controlled substance involved in the transaction or incident.
* * * * * *
(3) The taxes imposed under this section are subject to the same interest and penalties and the same procedures for collection and enforcement as other taxes imposed under this part... .
* * * * * *
[(6)] (b) Notwithstanding s. 119.14, the request and all information and documents furnished by the state attorney, statewide prosecutor, or Attorney General in support of such request are confidential and exempt from the provisions of chapter 119 and are subject to the provisions of s. 213.053. This paragraph is subject to the Open Government Sunset Review Act in accordance with s. 119.14.
Herre claims that section 212.0505 violates the Fifth Amendment of the United States Constitution and article I, section 9 of the Florida Constitution, which provide that no person shall be compelled in a criminal matter to be a witness against himself. In determining whether section 212.0505 violates the privilege against self-incrimination, we are guided by the Supreme Court's decision in Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968) and its companion cases, Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968), and Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969).
Under Marchetti, the "central standard for the privilege's application has been whether the claimant is confronted by substantial and `real,' and not merely trifling or imaginary, hazards of incrimination." 390 U.S. at 53, 88 S.Ct. at 705. Marchetti involved a federal statute that imposed an occupational tax on wagering and required persons who accepted the wagers to register annually with the local internal revenue office. The statute also required the local revenue office to maintain a listing of the persons who had paid the tax and to provide copies of the listing to any state or local prosecutor. The Court recognized that the tax was "directed at a `selective group inherently suspect of criminal activities.'" Id. at 57, 88 S.Ct. at 707 (quoting Albertson v. Subversive Activities Control Bd., 382 U.S. 70, 79, 86 S.Ct. 194, 199, 15 L.Ed.2d 165 (1965)). Because Marchetti was required to "provide information which he might reasonably suppose would be available to prosecuting authorities, and which would surely prove a significant `link in a chain' of *620 evidence tending to establish his guilt," the Court found the statute violative of the Fifth Amendment. Id. 390 U.S. at 48, 88 S.Ct. at 702 (footnote omitted).
Section 212.0505 taxes those persons who illegally traffic in marijuana and other controlled substances, and, therefore, it satisfies the Marchetti limitation that the statute be directed to a "selective group inherently suspect of criminal activities." Id. at 57, 88 S.Ct. at 707. Rule 12A-1.056, Florida Administrative Code, which applies to all sales tax transactions, requires that payment of the tax be accompanied by a tax return. The appropriate tax form for sales and use taxes in Florida is form DR-15 CS. Line one of form DR-15 asks for the amount of gross sales; line three asks for the taxable amount; line four asks for the amount of the tax collected; and line fourteen requires disclosure of the amount due with the return. The Department argues that there is no requirement that every line on the form be completed. Although we consider it common business sense to know that each line of a tax return must be completed to be considered valid, we also note that the form itself asks the taxpayer to complete the return.
Because the form does not require disclosure of the taxpayer's occupation or the nature of his business, the Department contends that the form does not require the taxpayer to differentiate between legal and illegal transactions. However, the fifty percent tax rate is only applied to those engaged in illegal activities, while the standard six percent sales tax rate is applied to all other transactions. Thus, one simple step of deductive reasoning would reveal that if a taxpayer collects $100,000 in gross sales and pays $50,000 in sales tax, the tax clearly is being paid on an illegal drug sale. The taxpayer's signature on the form, which serves as an admission that the taxpayer has participated in criminal activity, provides a link in the chain of incriminating evidence against him.
In Harris the court considered the same issue now before us and upheld the statute, but it distinguished Florida's drug sales tax law from the federal statutes in Marchetti, Grosso, and Leary, based on the confidentiality provisions of section 213.053, Florida Statutes (1987). Subsection 213.053(2) provides:
[A]ll information contained in returns, reports, accounts, or declarations received by the department, including investigative reports and information and including letters of technical advice, is confidential except for official purposes. Any officer or employee, or former officer or employee, of the department who divulges any such information in any manner, except for such official purposes . .. is guilty of a misdemeanor of the first degree....
Harris reasoned that the Fifth Amendment privilege could not be asserted because section 213.053 provides "sufficient protections at least coextensive with the privilege against self-incrimination itself." 563 So.2d at 99. We disagree.
The confidentiality provisions of subsection 213.053(2) are undermined by subsection 213.053(8), which requires the Department to provide any information contained in a return if a proper subpoena is issued.[4] Once a taxpayer completes the tax return and pays the amount due, the Department can legally release the information provided to state and federal law enforcement officials as long as those officials present a subpoena. In violation of one of the principles established in Marchetti, Florida's statutory scheme requires taxpayers to disclose information they *621 "might reasonably suppose would be available to prosecuting authorities." Marchetti, 390 U.S. at 48, 88 S.Ct. at 702. Thus, contrary to the court's analysis in Harris, the confidentiality provisions do not adequately protect the taxpayer from the risk of self-incrimination. See State v. Roberts, 384 N.W.2d 688 (S.D. 1986) (statute allowing release of tax information to law enforcement officials created substantial risk of self-incrimination).
As the district court points out, some states such as Nebraska, Iowa, Kansas, and Alabama have upheld drug tax statutes because they clearly protected the Fifth Amendment right of those taxpayers who paid the tax.[5] By not requiring taxpayers to disclose their names and other identifying information, and by restricting the use of such information in criminal proceedings, these statutes have afforded the taxpayer the same protections against self-incrimination that the Fifth Amendment provides. The Supreme Court of Kansas recognized that a statutory grant of immunity is not coextensive with the privilege against self-incrimination unless it grants "use immunity, or protection from the direct use of compelled incriminatory information, but also derivative use immunity, which prohibits use of any such information for investigatory purposes leading to other evidence of criminal activity." State v. Durrant, 244 Kan. 522, 769 P.2d 1174, 1183 (Kan.), cert. denied, 492 U.S. 923, 109 S.Ct. 3254, 106 L.Ed.2d 600 (1989). Section 212.0505 does not grant immunity in any form, and therefore, it requires Herre to disclose incriminating information that he might reasonably suppose would be used against him in a criminal prosecution.
For these reasons, we hold that section 212.0505 violates the Fifth Amendment of the United States Constitution and article I, section 9 of the Florida Constitution. We approve Herre and disapprove Harris.
It is so ordered.
BARKETT, C.J., and OVERTON, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] The Department estimated the retail price of 300 pounds of marijuana to be $210,000. Thus, the resulting tax assessed against Herre amounted to $105,000.
[2] § 212.0505(1)(b), Fla. Stat. (Supp. 1988).
[3] § 212.12(2), Fla. Stat. (Supp. 1988).
[4] Subsection 213.053(8) provides:

The Department of Revenue shall provide returns, reports, accounts, or declarations received by the department, including investigative reports and information, or information contained in such documents, pursuant to an order of a judge of a court of competent jurisdiction or pursuant to a subpoena duces tecum only when the subpoena is:
(a) Issued by a state attorney, a United States attorney, or a court in a criminal investigation or a criminal judicial proceeding;
(b) Issued by a state or federal grand jury; or
(c) Issued by a state attorney, the Department of Legal Affairs, a United States attorney, or a court in the course of a civil investigation or a civil judicial proceeding under the state or federal racketeer influenced and corrupt organization act.
[5] Briney v. State Department of Revenue, 594 So.2d 120 (Ala. Civ. App. 1991); State v. Godbersen, 493 N.W.2d 852 (Iowa 1992); State v. Durrant, 244 Kan. 522, 769 P.2d 1174, cert. denied, 492 U.S. 923, 109 S.Ct. 3254, 106 L.Ed.2d 600 (1989); State v. Garza, 242 Neb. 573, 496 N.W.2d 448 (1993).